## Commonwealth *v.* Tyahla, Appellant.

Argued April 26, 1937.

Be-fore Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*George A. Shutack,* for appellant.

*Albert H. Heimbach,* for appellee.

OPINION BY JAMES, J., September 29, 1937:

Appellant was convicted and sentenced upon an indictment which charged a violation of section 602(d) of the Liquor Control Act of July 18, 1935, P. L. 1246, 47 PS §744-602(d), in that the defendant did have and keep liquor in a package which had not been sealed with the official seal of the Pennsylvania Liquor Control Board.

Appellant was licensed to sell liquor at 416 Centre Street, East Mauch Chunk, Pa. On August 27, 1936, on a search made of the premises by officers of the liquor control board, the following articles were found: In the restaurant proper, a stock of liquors in bottles of the State store; in the kitchen, a bottle of rye flavoring; on the stairway leading from the first to the second floor, a gallon jug containing alleged liquor; and in an outbuilding, a twenty-five gallon keg containing about thirteen gallons of alleged liquor. Neither the jug nor the keg carried the official seal of the liquor control board.

A chemist, called by the Commonwealth, testified that a sample taken from the jug contained 42 per cent alcohol, proof 84, a mixture of alcohol and water colored with caramel, and was artificial whiskey fit for beverage purposes; and that the sample taken from the keg was 40.8 per cent alcohol by volume, 81.6 proof, and designated by him as a beverage. One of the officers who participated in the search also testified that the keg contained alcoholic liquor. It further appears that liquor is not sold by the liquor control board except in bottles. The only testimony offered by the appellant was character testimony.

Appellant's assignments of error relate to the suf-

ficiency of the testimony to sustain the conviction; to the exclusion of the testimony of a character witness; and to alleged errors in the charge of the court.

Appellant argues that the evidence submitted by the Commonwealth was not sufficient to sustain a conviction because the Commonwealth failed to prove: (1) That the keg or jug was a package within the meaning of the act; (2) that the keg or jug had never been sealed with the official stamp of the liquor control board; and (3) that the liquid in the keg or jug was liquor.

The title of the Pennsylvania Liquor Control Act of 1935, supra, is in part as follows: "AN ACT To regulate and restrain the sale, manufacture, possession, transportation, importation, traffic in, and use of alcohol and alcoholic and malt or brewed beverages." Under the act, the Pennsylvania Liquor Control Board has the power, and its duty is, to control the manufacture, possession, sale, consumption, importation, use and delivery of liquor and alcohol, and it is required to establish, operate and maintain stores for the sale of liquor and alcohol. By section 203, the board may make regulations regarding, (f) "The sealing and labeling of liquor and alcohol sold under this act and of liquor and alcohol lawfully acquired by any person prior to January first, one thousand nine hundred and thirty-four." Section 305 provides, inter alia, that no liquor or alcohol shall be sold to any purchaser except in a package sealed with the official seal of the board required by this act, which package shall not be opened on the premises of a Pennsylvania liquor store. To enforce compliance with these provisions, section 602(d) was adopted. This section provides: "It shall be unlawful for any person, except a manufacturer, or the board, or the holder of a sacramental wine license or of an importer's license, or a priest, clergyman or rabbi who has purchased wine from the holder

of a sacramental wine permit, to have or keep any liquor within the Commonwealth, unless the package (except the decanter or other receptacle containing liquor for immediate consumption) in which the liquor is contained has, while containing that liquor, been sealed with the official seal of the board ......"

In the interpretation and construction of its various provisions, the act provides, in article 1 section 3, as follows: "Interpretation of Act.— (a) This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose. (c) Except as otherwise expressly provided, the purpose of this act is to prohibit transactions of liquor and alcohol which take place wholly within the Commonwealth, except by and under the control of the board, as herein specifically provided, and every section and provision of the act shall be construed accordingly ......" Section 2, under the heading "Definitions," provides: "The following words or phrases, unless the context clearly indicates otherwise, shall have the meanings ascribed to them in this section: 'Manufacturer' shall mean any person, association, or corporation engaged in the producing, bottling, manufacturing, distilling, rectifying or compounding of liquor, alcohol, and malt or brewed beverages in this Commonwealth. 'Package' shall mean any container or containers, or receptacle or receptacles, used for holding liquor, alcohol, and malt or brewed beverages, as marketed by the manufacturer."

The language of section 602(d) sets up a double requirement: (1) That the package must have the seal of the board; and (2) that it must have been sealed while the liquor was in the package. The only exception is to a decanter or other receptacle containing

liquor for immediate consumption. The possession, in the case at bar, apparently violates both requirements. The language of the exception indicates that to keep liquor, not for immediate consumption, in a decanter or other receptacle, which does not have the seal of the board, is unlawful. It is apparent, therefore, that the word "package" in this section was intended to include receptacles other than those described by the statute as marketed by the manufacturer. If we uphold appellant's contention that this section includes only such packages as marketed by a manufacturer, we reach the absurd result that it would be lawful to have or keep liquor in innumerable containers of every size and description that were not marketed by a manufacturer, even though not sealed with the official seal of the board. Section 2 of the act, which defines the word package and adds to the definition of the words "as marketed by the manufacturer," states that the words defined shall have such meaning as ascribed to them in this section, "unless the context clearly indicates otherwise." It seems clear from the context, under section 602(d), that the word package is not limited to the package as marketed by a manufacturer. Keeping in mind also subsections (a) and (c) of section 3, which provide both for a liberal construction of the act, to carry out its purposes for the protection of the public welfare, etc., and to prohibit transactions in liquor or alcohol, except by and under the control of the board, we are led to the conclusion that the gallon jug and keg were packages within the meaning of section 602(d).

The second proposition is, that the Commonwealth has not shown the packages had not been sealed while they contained liquor. There was testimony that neither the jug nor the keg had the seal of the board when found, and that the State stores do not sell liquor in jugs or kegs, but only in bottles. To require the

Commonwealth to go further than this would place an impossible burden upon it. It would require proof as to every instant of time since the liquor was first placed in the package. Having established that the packages containing liquor did not have the official seal of the board, a prima facie case was made out, and the court below was correct in submitting the case to the jury.

Appellant also argues that the liquids found in the jug and keg were not liquors within the meaning of section 2 of the act, which defines liquor as any alcoholic, spirituous, vinous, fermented, or other alcoholic beverage, or combination of liquors and mixed liquor, a part of which is spirituous, vinous, fermented or otherwise alcoholic, and all drinks or drinkable liquids, preparations or mixtures intended for beverage purposes, which contain more than one-half of one per cent of alcohol by volume, except alcohol, and malt or brewed beverages. As thus defined, liquor is classified in three ways: (1) "Any alcoholic, spirituous, vinous, fermented or other alcoholic beverage"; (2) "a combination of liquors and mixed liquor, a part of which is spirituous, vinous, fermented or otherwise alcoholic"; and (3) "all drinks or drinkable liquids, preparations of mixtures intended for beverage purposes," which contain more than one-half of one per cent of alcohol by volume.

Without attempting to determine to which class of liquors the mixtures found in the keg and the jug belong, the testimony did establish that they did contain more than one-half of one per cent alcohol by volume and were fit for beverage purposes, and whether they were so intended was a fact to be determined from all the circumstances. As was said by the court below: "Intent being a state of mind is rarely susceptible of direct proof, but must ordinarily be inferred from the facts. In this case the defendant had a liquor license, he had in an adjoining room secretly hidden in a stairway a

gallon jug three-fourths full of illegal liquor fit for beverage purposes, and he had in a building on his premises a twenty-five gallon keg, buried in a hole covered with planks, half filled with illegal liquor, and which the jury found was fit for beverage purposes." We are clearly of the opinion that the evidence fully warranted the jury in finding that the liquids contained in the packages were liquor within the definition of the act.

Appellant offered the testimony of Henry Klitsch as to good reputation. The witness testified that he lived in the same community as appellant and knew him for twelve years. On direct-examination, he testified that he knew quite a few people who knew him. On cross-examination, it appeared that the witness had never heard appellant's reputation discussed and further that he was not acquainted with his acquaintances, nor did he "mix with people that mix with this defendant." Whereupon the court declared the witness incompetent. This is assigned as an error. To be qualified to testify as to the reputation of a person, the witness must be acquainted with the reputation in the neighborhood in which he resides. A witness who knows nothing of the defendant's business dealings or of people who know the defendant is not competent. Such a witness could scarcely be said to have any knowledge of the defendant's reputation. It is true that a witness to good reputation may testify by saying that he has never heard anything said against the person: Wigmore, Evidence, 2nd Edition, §1614; *Milliken v. Long,* 188 Pa. 411, 41 A. 540. But the repute to which the witness testifies must be among people who have had an adequate opportunity of observing the person's conduct in the neighborhood of his home or in the group of persons with whom he associates intimately: Wigmore, Evidence, 2nd. Edition, §§1615, 1616.

Appellant assigns as error the refusal of the court to

charge the jury as follows: "The jury is not bound by opinion testimony and may ignore it altogether." Counsel contends that the chemist's testimony that the liquid was "fit for beverage purposes" was such opinion evidence. The court did charge that the credibility of the witnesses was for the jury. It is true that the jury is not bound by opinion evidence, but it is not true that they may ignore it altogether. It must be considered just as all other evidence must be considered. Whether it is to be believed is, of course, a question for the jury, and the charge of the court so stated. The point as presented was misleading and, therefore, properly rejected.

Assignments 3, 4, 5, 9 and 10 relate to the refusal to read certain points which were affirmed by the court. An examination of the charge discloses that all the points were adequately covered in the charge. "When a trial judge instructs the jury in an intelligible manner, stating all of the principles of law that need be considered by the jury before rendering a verdict in the case committed to their keeping and applies these principles to the evidence in such a way that the jurors clearly understand the issues which they are to decide and are enabled by these instructions, if honestly and sensibly considered by them, to reach a just conclusion, counsel have no cause for complaint": *Com. v. Duca*, 312 Pa. 101, 165 A. 825; Sadler, Criminal Procedure, 2nd. Edition, §576.

The sixth assignment alleges error in refusing to charge the jury that a package is as defined by section 2 of the act. In view of our conclusion that this definition did not cover the packages held by appellant, the court below was correct in refusing to so charge.

The assignments of error are overruled and the judgment is affirmed and the record is remitted to the court below, and it is ordered that the defendant appear in the court below at such time as he may be there called,

and that he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal in this case was made a supersedeas.