Commonwealth *v.* Gaines, Appellant.

Argued March 28, 1950. Before RHODES, P. J. HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Michael von Moschzisker,* with him *Thomas D. Mc-Bride* and *Jacob Kossman,* for appellant.

*John F. Kane,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY ROSS, J., September 27, 1950:

This is an appeal from judgment of sentence on a conviction of conspiracy to commit burglary. The defendant, Gaines, was indicted with David Dabney and William Fields on several bills of indictment charging criminal conspiracy.[1] Dabney and Fields entered pleas of guilty and testified for the Commonwealth. Gaines, after waiving a jury trial, was convicted by the trial judge and sentence imposed. This appeal involves only an indictment charging conspiracy to burglarize the residence of Harry Kanefsky.

Kanefsky testified that his home had been broken into on February 20, 1949 and, among other things, a diamond ring had been stolen. Dabney testified that he, with Fields and one Butts, had committed the burglary. He testified that he gave the diamond ring to the defendant pursuant to a conversation he had had with the defendant before the burglary.

The first question involved in this appeal is whether the evidence was sufficient to sustain a conviction.

The elements of conspiracy to do an unlawful act are a combination of two or more persons, with criminal intent or corrupt motive, to do a criminal or unlawful act, or an act not in itself unlawful, by criminal or unlawful means. *Com. v. Kirk*, 141 Pa. Superior Ct. 123, 14 A. 2d 914. The gist of the offense is the unlawful confederation. *Com. v. Weldon*, 159 Pa. Superior Ct. 447, 48 A. 2d 98. "The Commonwealth was not required to prove an express agreement. It is very rare that a formal or explicit agreement can be proved in a conspiracy case." *Com. v. Weiner*, 148 Pa. Superior Ct. 577, 581, 25 A. 2d 844. Although no overt act is needed to sustain a charge of conspiracy (*Com. v. Weldon*, supra) overt acts are evidence from which a conspiracy can be

---

[1] Section 302 of The Penal Code of June 24, 1939, P. L. 872, 18 PS 4302.

inferred. *Com. v. Kelson,* 134 Pa. Superior Ct. 132, 3 A. 2d 933; *Com. v. Rosen,* 141 Pa. Superior Ct. 272, 14 A. 2d 833. ". . . the offence is complete . . . the moment the combination is formed. The overt acts are no part of the crime charged; they are merely the evidence of it; the means by which the Commonwealth is enabled to prove the conspiracy itself. . . . The fact of the combination is almost always inferred by the jury from the acts, the overt acts of the parties, as direct evidence in the shape of declarations can seldom be shown." *Com. v. McHale,* 97 Pa. 397, 405.

In determining whether the evidence will sustain the conviction, the evidence adduced by the Commonwealth must, of course, be accepted as true. According to it, Dabney was a thief and known as such to the defendant. On two occasions prior to the Kanefsky burglary, the defendant had designated to Dabney two other residences to be burglarized, which was done—or attempted to be done—by Dabney and Fields. Immediately prior to the Kanefsky burglary, the defendant stated to Dabney that "he wanted a diamond ring for his wife" and Dabney further testified: "I told him I would get him one and wouldn't charge him nothing for it" and "I went to Mr. Gaines' house and gave Mr. Gaines two hundred dollars for Butts, to get him out of jail. Mr. Gaines said , 'Mama wants a diamond ring.' So I told him I would get him one, the first time we got one I would give him one." Later—*overt acts*—a diamond ring was stolen by Dabney and Fields and delivered to the defendant. When the ring was delivered to the defendant, Dabney said to him, "Take the stone out and have it mounted in another ring so it won't be recognized", and Gaines said, "Okay".

The evidence in this case and the inferences to be drawn therefrom amply sustain the trial judge's finding of guilt.

The other question in the appeal is whether the trial judge erred in striking certain "reputation" testimony from the record.

Morallis, Brown and Wright, three character witnesses for the defendant, testified that they had known the defendant for a number of years, that they knew other people who knew him and that his reputation among the people who knew him was good. On cross-examination these witnesses testified as follows: Morallis, "Q. Who did you ever discuss his reputation with? A. I don't remember discussing his reputation, but in my contact with him— Q. With whom did you ever discuss his reputation? A. I haven't had any occasion to discuss it." Brown, "Q. Did you ever talk to anybody about him? A. I never questioned his reputation. Q. Did you ever talk to anybody about his reputation? A. No." Wright, "Q. Did you ever talk to anybody about his reputation? A. No." On motion by the prosecuting attorney, all the testimony of these witnesses was stricken from the record, apparently on the theory —we have no opinion of the trial court to guide us— that if the witnesses had not discussed the defendant's reputation with anyone or heard it discussed they could not be acquainted with that reputation in the neighborhood in which the defendant resided, but rather were giving their own appraisal of the defendant.

It may be admitted that it is immaterial whether or not these witnesses had ever *said* anything about the reputation of the defendant, but we think that the answers given on cross-examination imply that the witnesses had neither *said* anything about the reputation of the defendant nor *heard* the subject mentioned. This interpretation impels us to conclude that none of these witnesses was competent to give *affirmative* evidence in regard to the reputation of the defendant since, by their own admissions, they were not cognizant of the general

speech of the community on the subject. It is not the personal opinion of the witness which is admissible, but the general reputation which the defendant enjoys in the community that is competent. *Com. v. Howe,* 35 Pa. Superior Ct. 554. If *affirmative* evidence of good character *alone* were admissible, the action of the court below would be sustainable; there is, however, a well established rule permitting *negative* proof of good reputation. Within the confines of this rule, a witness who has never discussed nor heard discussed the reputation of a criminal defendant may nevertheless be competent to give proof of good reputation if it appears that he moved in the same circles as the defendant and would have heard adverse comment had there been any. The rule is stated in Wigmore on Evidence, 3rd Edition, sec. 1614, as follows: ". . . the absence of utterances unfavorable to a person is a sufficient basis for predicating that the general opinion of him is favorable." And in *Morss v. Palmer,* 15 Pa. 51, at page 57, it is said: "But surely it is evidence in support of character, that a witness acquainted with the person assailed, living in his neighborhood, has never heard any ill of him." The admissibility of negative proof of good reputation is recognized without extended discussion in *Milliken v. Long,* 188 Pa. 411, 41 A. 540; *Com. v. Tyahla,* 128 Pa. Superior Ct. 414, 194 A. 322; *Com. v. McGillicuddy,* 82 Pa. Superior Ct. 437.

If we turn to the decisions of other jurisdictions we find ample support for a holding that the fact that a character witness has heard nothing said against a criminal defendant is a sufficient basis for a direct statement that his reputation is good. In *Valent v. State,* 33 Del. 407, 2 W. W. Harr. 407, 138 A. 643, the Supreme Court of Delaware held it error to strike the testimony of a character witness who testified that he knew the general reputation of the defendant for the

trait involved *and that such reputation was good.* It was so held even though it appeared on cross-examination that the witness had never heard the reputation of the defendants discussed at all, and that he had never heard anyone speak either good or ill of the defendants. *People v. Huffman,* 325 Ill. 334, 156 N.E. 342, was a prosecution for rape in which the defendant called a witness who testified that she had known him for five or six years, seeing him frequently during that time; that she knew his general reputation for chastity and good morals in the community in which he lived, *and that that reputation was good.* On cross-examination, the witness stated she had not discussed the defendant's reputation for chastity and good morals at any time or place. It was held that the trial court erred in striking the testimony of the witness from the record. In *People v. Woods,* 206 Mich. 11, 172 N.W. 384, the character witness testified that he had known the defendant for a number of years, that he knew his reputation, *and that that reputation was good.* On cross-examination the witness admitted he had never heard anything said about the defendant's reputation one way or the other. Here again it was held error to strike out the testimony of the witness. In *People v. Hoffman,* 199 Cal. 155, 248 P. 504, two character witnesses called by the defendant *testified to the good reputation* of the defendant for peace and quiet in the community in which he lived. The prosecution, on cross-examination, asked each witness if he had ever discussed the defendant's reputation with anyone or heard it discussed. These questions were answered in the negative. It was held that the trial court erred in striking the testimony. See also 20 Am. Jur., Evidence, sec. 328 and 67 A.L.R. 1210.

In *Com. v. Cleary,* 135 Pa. 64, 19 A. 1017, at page 84, it was said: "Evidence of good character is always admissible for the defendant in a criminal case; it is to be

weighed and considered in connection with all the other evidence in the case,—it may of itself, in some instances, create the reasonable doubt which would entitle the accused to an acquittal. The rule itself is not merely merciful. It is both reasonable and just. There may be cases in which, owing to the peculiar circumstances in which a man is placed, evidence of good character may be all he can offer in answer to a charge of crime. Of what avail is a good character, which a man may have been a lifetime in acquiring, if it is to benefit him nothing in his hour of peril?" See also *Com. v. Giovanetti,* 341 Pa. 345, 358, 19 A. 2d 119, in which the same passage was quoted with approval. In *Com. v. Padden,* 160 Pa. Superior Ct. 269, 50 A. 2d 722, speaking through Judge Reno, at page 275, we said: "Evidence of good character is substantive and positive evidence, not a mere make-weight to be considered in a doubtful case, and, according to all our authorities, is an independent factor which may of itself engender a reasonable doubt or produce a conclusion of innocence."

In our opinion, the action of the trial judge in striking from the record the testimony of the character witnesses in this case deprived the defendant of a substantial right which should have been his and, therefore, was error.

Judgment reversed with a venire.