## Kelechava et al. v. Hanover Township

*Wm. S. Hudders,* for plaintiffs.
*Edwin K. Kline, Jr.,* for respondent.

DIEFENDERFER, J., July 7, 1952.—On March 12, 1952, the Supervisors of Hanover Township adopted a resolution, effective immediately, as follows:

"*Resolved,* that the Board of Road Supervisors of Hanover Township deem it necessary for the health, safety and general welfare of the citizens of said Town-

ship to regulate the storage of crude oil and/or any of its volatile products or other highly inflammable liquids, and the following regulations and prohibitions are hereby established to accomplish that purpose, and shall hereafter apply.

"*Section I.* The storage of crude oil or any of its volatile products or other highly inflammable liquids in aboveground tanks, having a capacity of more than 75,000 gallons, is hereby prohibited and made unlawful.

"*Section II.* The storage of crude oil or any of its volatile products or other highly inflammable liquids in aboveground tanks, having a capacity of less than 75,000 gallons, is hereby prohibited and made unlawful, unless said tanks are constructed in accordance with State regulations in respect thereto; and provided further that all aboveground tanks having a capacity of 10,000 gallons or more, shall be properly diked with dikes having a capacity equal to one and one-half times the capacity of the tank or tanks surrounded.

*Section III.* Violation of any provision of this resolution by any owner or lessee or other person, shall constitute an offense, and each twenty-four hour violation shall be deemed a separate offense, punishable by a fine not to exceed $300.00 for any one offense, and in default of payment of the same imprisonment not exceeding 30 days.

*Section IV.* If any part of this resolution is for any reason held to be unconstitutional or invalid, such decision shall not affect the remainder of this resolution.

*Section V.* This resolution is adopted pursuant to the provisions of the Act of July 15, 1935, P. L. 1016, as amended, and is hereby declared to be urgent and to take effect immediately upon adoption."

Individual complainants are the owners of land in Hanover Township which the corporate complainant

has an option to purchase for $22,500. Corporate complainant plans to erect on this land a bulk storage plant for gasoline, kerosene and heating oil in above-ground tanks as follows:

| Capacity | Dimension | Material to be stored |
| --- | --- | --- |
| 1,050,000 gallons | 61 x 48 | Heating Oil |
| 1,050,000 gallons | 61 x 48 | Heating Oil |
| 840,000 gallons | 55 x 48 | Esso Gasoline |
| 588,000 gallons | 46 x 48 | Esso Extra Gasoline |
| 210,000 gallons | 30 x 40 | Kerosene |
| 210,000 gallons | 30 x 40 | Kerosene |

On April 7, 1952, complainants filed a complaint against the resolution, asking this court to declare it void and of no effect because, they say, it is (a) inconsistent with State regulations; (b) arbitrary and unreasonable; (c) unlawful, unjustifiable interference with the use of complainants' property, and (d) unconstitutional.

A great deal of testimony was taken which related to the plans of this particular complainant and to the effect of its plans upon neighboring properties. This testimony was relevant only to the extent that it showed that complainants were parties aggrieved. The ordinance must be tested not by what this complainant plans to do nor by where it plans to do it but by what any others might do anywhere in the township in the absence of such a resolution.

On the other hand, if the ordinance bears a reasonable relation to public safety, we are not concerned with any other motives that may have helped to promote its adoption.

It seems clear that the resolution was passed pursuant to subsection XX of section 702 of the Second Class Township Code of May 1, 1933, P. L. 103, as variously amended, 53 PS §19093-702 (XX), which reads as follows:

"To regulate and prohibit, by resolution or ordinance, the manufacture, of fireworks or other inflam-

mable or dangerous articles; to grant permits for supervised public displays of fireworks and to adopt reasonable rules and regulations governing such displays; to adopt reasonable rules and regulations not inconsistent with State regulations covering the storage of inflammable articles; and to prescribe such other safeguards concerning the same as may be necessary. In the exercise of the powers herein conferred, the township may institute proceedings in courts of equity."

The permission of the business under restrictions negatives any theory that the resolution was passed under the nuisance clause, subec. XII of the same section, 53 PS §19093-702 (XII).

The resolution does not purport to be a zoning ordinance under subsection XXV nor does it gain any greater validity under the health and safety subsection XXIX, or the new public safety subsection (Act of May 24, 1951, P. L. 370, sec. 8, 53 PS §19093-702 (XLVII)) than it has under subsection XX.

The ordinance is not inconsistent with State regulations. In the first place, section 9 of such regulations does not specifically permit the use of tanks of unlimited capacity; it merely provides the clearances if such tanks are used. In the next place, the State provides minimum restrictions; it does not preclude more stringent restrictions by the municipalities involved. Finally, State regulations specifically provide that a local permit shall be gotten, where such is required.

Reasons (b), (c) and (d) stand or fall together. If it is a reasonable safety measure to limit the size of storage tanks, then it is no unlawful interference with complainants' use of their property to prevent their erecting larger tanks upon it, nor is it unconstitutional so to do if there is a reasonable relation to public safety.

At first blush it would seem apparent that limitation in the size of storage tanks for inflammable material would be a reasonable safety measure and, in the absence of evidence to the contrary, we would certainly so hold. Diking to 1½ times capacity also seems reasonable to provide for expansion of materials or their propulsion by wind or otherwise, or as a mere margin for safety or error.

Complainants, however, offered expert testimony that there is no relation between the size of storage tanks and the danger involved in their presence and this testimony has been uncontradicted.

The court is not bound by such testimony even uncontradicted (Commonwealth v. Tyahla, 128 Pa. Superior Ct. 414, 422; Ray, to use, v. Philadelphia, 344 Pa. 439, 440; Jackson & Perkins Company v. Mushroom Transportation Company, Inc., et al., 351 Pa. 583, 590), but we should not fly in the face of it if it is deemed to have passed into the realm of indisputable scientific knowledge of which the court ought to take judicial notice.

Manorville Borough v. Flenner, 286 Pa. 103, is cited to us as an adjudication that there is no relation between size of tanks and safety and it seems to so hold and has been cited for that proposition: Pennsylvania Co., etc., et al. v. Sun Co., 290 Pa. 404, 414.

There are three elements which weaken the authority of the Manorville case: (1) The trier of facts found that there was no relation between quantity stored and risk incurred and therefore the finding of the Supreme and Superior Courts may be one of fact and not of law; (2) the regulation in that case (400 gallons permitted) was absurdly low and the amount desired (3 tanks of 12,000 gallons each) was eminently reasonable, and (3) the decision was based upon the safeguards in the particular installation and upon supervision of the operation, neither of which should govern,

for safety legislation should not require supervision nor depend upon precautionary measures by a particular individual.

In this case we have not only the Manorville Borough case, supra, but also the uncontradicted testimony of a recognized expert that limiting storage to 75,000 gallon tanks does not add any safety factor to the storage of gasoline, oil or kerosene. Legislation cannot be based upon the unfounded fears of either the legislators or of their constituents.

It may be noted that the Hanover resolution will not prevent the storage of large quantities of inflammables in one location. It simply limits the size of tanks. Under State regulations 75,000 gallon tanks would have to be 15 feet apart and 50 feet from the boundary line of the property, while 1,050,000 gallon tanks would have to remain either 48 or 61 feet apart and remain 200 feet from the property line. Since it would take 14 of the 75,000 tanks to hold the quantity held by a 1,050,000 gallon tank, they would cover greater territory, but not merely 14 times as much and the net result as a safety factor is negligible.

Complainants have contracted for the purchase of 15 acres of land. They could store many times the amount proposed to be stored in either the colossal tanks proposed or in 75,000 gallon tanks and still comply with both the Hanover Township and with State regulations. Whether or not, therefore, the storage is limited to 75,000 gallon tanks or to larger ones is immaterial.

If Hanover Township can pass the ordinance suggested then every other township in the State can do the same. Consequently, we could be in the position of finding complainants unable to erect any tanks with more than 75,000 gallons capacity. The right to regulate should never be construed with the right to destroy modern methods for conducting business under the

guise of regulations for safety, health and general welfare. In addition, this township is to a great extent made up of farm lands.

Now, July 7, 1952, the court finds that section 1 of the resolution passed by the Supervisors of Hanover Township on March 12, 1952, relating to the storage of crude oil or its volatile products bears no reasonable relation to the health, safety or general welfare of the residents of Hanover Township and section 1 is hereby declared to be void and of no effect. Costs to be paid by complainants.