J-S37023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL WAYNE BECK | |
| Appellant | No. 1668 MDA 2016 |

Appeal from the Order Entered September 22, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0007955-2013

BEFORE:  STABILE, J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                **FILED DECEMBER 12, 2017**

Michael Wayne Beck appeals from the September 22, 2016 order entered in the York County Court of Common Pleas dismissing his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46.  We affirm.

This Court summarized the factual and procedural history of this matter in a prior memorandum, as follows:

> On May 16, 2013, B.B. (the Victim), who was 17 years-old at the time, went to the house of his good friend, Carlos, around 2:40 p.m., to wait for Carlos to get home from school around 3:00 p.m.  N.T., 3/5/14, at 64.  The Victim intended to wait on the porch for Carlos.  *Id.*  Upon arriving at the house, the family dog began to bark, and [Beck], Carlos's father, heard the Victim on the porch and invited him to wait inside for Carlos.  *Id.* at 64-65.  [Beck] and the Victim sat in the living room and made small talk for several minutes.  *Id.* at 65-66. Eventually, the conversation shifted to a discussion about college, which caused [Beck] to start

crying about Carlos leaving, and that his girlfriend, and her father, had both just passed away, so that he had no one left. *Id.* at 67. The Victim was uncomfortable, but did not want to be rude and leave. *Id.* When his phone rang, he attempted to use it as an excuse to leave. *Id.* at 68. The Victim stood up to leave, but [Beck] unexpectedly came up to the Victim and began hugging him. *Id.* The Victim then testified as follows.

[The Commonwealth]:

Q. And so how did you respond to being hugged by him?

[The Victim]:

 A. Well, it made me uncomfortable. I was kind of just like, okay, you know, all right, that's enough. But he just didn't let go and he just kept pulling me in tighter and tighter, you know, and then at which point he kind of like pulled his head back a little and he stopped crying at that point and he was just like staring at me in my eyes and he put his left hand around the back of my neck and he came in and tried to kiss me and I jerked my head away.

 I go whoa, what are you doing? What are you doing? And he was like oh, nothing. I'm like let me go. I'm like let me go, this is uncomfortable. You're not acting like yourself. He goes, well of course I am. I feel fine. How do you feel? At which point he patted my stomach with his right hand while his left hand was still around the back of my neck and then he put his hand down and he grabbed my penis through my jeans, on the outside of my jeans, and then he started to stroke - - I guess feel, fondle, I don't know, my testicles through my jeans like in between my legs.

Q. And . . . that fondling or feeling you talked about, about how long did that last, if you remember?

A. I mean just a few seconds, just long enough for it to register I mean about how he did it. It was like a grab and then like this sort of a motion.

At that point it just clicked to me what was happening, you know, and I just like jerked away from him and I grabbed his wrists and brought them up and like pushed them off of me and he kind of stumbled back and he raised his hands and made a face as if he had been caught, a face like whoa, whoa. And then at that point I just needed to leave, so I ran out of there.

*Id.* at 68-69.

On December 11, 2013, the Commonwealth filed an information charging [Beck] with corruption of minors, indecent assault, unlawful contact or communication with minors, and open lewdness.[1] The unlawful contact or communication with minors and open lewdness charges were withdrawn prior to trial. On March 5, 2014, a two-day jury trial commenced. On March 6, 2014, the jury found [Beck] guilty of indecent assault and corruption of minors. On July 30, 2014, [Beck] was sentenced to 6 to 23½ months' imprisonment, followed by two years' probation. Thereafter, on August 29, 2014, [Beck] filed a timely notice of appeal.

*Commonwealth v. Beck*, No. 1472 MDA 2014, unpublished mem. at 1-4

(Pa.Super. filed Aug. 25, 2015) (original footnotes omitted). This Court

affirmed Beck's judgment of sentence on August 25, 2015.

On April 4, 2016, Beck filed the instant PCRA petition. The PCRA court

held hearings on the petition on June 20 and 23, 2016. On July 14, 2016, the

Commonwealth filed a memorandum in opposition of the petition. On July 25,

---

[1] 18 Pa.C.S. §§ 6301(a)(1)(ii), 3126(a)(1), 6318(a)(1), and 5901, respectively.

- 3 -

2016, Beck filed a brief in support of the petition. On September 22, 2016, the PCRA court dismissed the petition. Beck timely filed a notice of appeal.

Beck raises the following issues on appeal:

1. Whether the [PCRA] court erred in denying [Beck]'s Petition for Post-Conviction Relief regarding [Beck]'s trial counsel's failure to call at trial character witnesses to testify to [Beck]'s reputation for truthfulness?

2. Whether the [PCRA] court erred in denying [Beck]'s Petition for Post-Conviction Relief regarding [Beck]'s trial counsel's failure to call at trial character witnesses to testify to the [Beck]'s reputation for appropriateness around children?

3. Whether the [PCRA] court erred in denying [Beck]'s Petition for Post-Conviction Relief regarding [Beck]'s trial counsel's failure to call at trial character witnesses to testify to [Beck]'s reputation for peacefulness?

4. Whether the [PCRA] court erred in denying [Beck]'s Petition for Post-Conviction Relief regarding [Beck]'s trial counsel's failure to call at trial character witnesses to testify to [Beck]'s reputation for self-control?

Beck's Br. at 3 (answers below omitted).

Our standard of review from the denial of PCRA relief "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1242 (Pa.Super. 2011).

When analyzing claims of ineffective assistance of counsel, we begin with the presumption that counsel was effective. ***Commonwealth v. Spotz***, 18 A.3d 244, 259-60 (Pa. 2011). "[T]he defendant bears the burden of proving ineffectiveness." ***Commonwealth v. Ligons***, 971 A.2d 1125, 1137 (Pa. 2009). To overcome the presumption of effectiveness, a PCRA petitioner

must demonstrate that: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (internal quotation and citation omitted). Further,

> [t]o establish the second ineffectiveness prong, the petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To establish the third prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

*Commonwealth v. Watley*, 153 A.3d 1034, 1040 (Pa.Super. 2016) (internal quotations and citations omitted), *app. denied,* 169 A.3d 574, (Pa. 2017).

Here, Beck alleges that trial counsel failed to call character witnesses regarding his reputation for truthfulness, appropriateness around children, peacefulness, and self-control. "[T]he importance of good character evidence is well-recognized" in Pennsylvania. *Commonwealth v. Nellom*, 565 A.2d 770, 776 (Pa.Super. 1989). "Evidence of good character is substantive and positive evidence, not a mere make weight to be considered in a doubtful case, and, . . . is an independent factor which may of itself engender reasonable doubt or produce a conclusion of innocence." *Commonwealth v. Luther*, 463 A.2d 1073, 1077 (Pa.Super. 1983) (quoting *Commonwealth v. Gaines*, 75 A.2d 617, 629 (Pa.Super. 1950)). Accordingly, the "[f]ailure to present available character witnesses may constitute ineffective assistance of

counsel. ***Commonwealth v. Harris***, 785 A.2d 998, 1000 (Pa.Super. 2001).

We have held that:

> To satisfy the prejudice prong of [the ineffectiveness] test when raising a claim of ineffectiveness for the failure to call a potential witness at trial, our Supreme Court has instructed that the PCRA petitioner must establish that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Wantz***, 84 A.3d 324, 331 (Pa.Super. 2014).

> We have also discussed the admission of character evidence:

> Under Pennsylvania Rule of Evidence 404(a)(1), a "person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Pa.R.E. 404(a)(1). Under Rule 404(a)(2)(A), a criminal defendant may introduce evidence of a "pertinent" character trait. "Pertinent" means relevant to the crimes charged. ***Commonwealth v. Minich***, 4 A.3d 1063, 1071 (Pa.Super. 2010). In rebuttal, the Commonwealth may offer evidence of the defendant's bad character. Pa.R.E. 404(a)(2)(A). Pennsylvania law generally limits proof of character evidence to a person's reputation, and opinion evidence cannot be used to prove character. Pa.R.E. 405(a).

***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 781 (Pa.Super.)

(internal footnote omitted), *app. denied*, 123 A.3d 331 (Pa. 2015). We have

further explained that:

> **Evidence of good character offered by a defendant in a criminal prosecution must be limited to his *general reputation for the particular trait or traits of character* involved in the commission of the crime charged.** The cross-examination of such witnesses by the Commonwealth must be limited to the same traits. Such

evidence must relate to a period at or about the time the offense was committed, and **must be established by testimony of witnesses as to the *community opinion* of the individual in question, *not through specific acts or mere rumor.***

***Commonwealth v. Johnson***, 27 A.3d 244, 248 (Pa.Super. 2011) (quoting

***Luther***, 463 A.2d at 1077-78) (emphases in original).

## I.     Truthfulness

We first address Beck's claim that trial counsel was ineffective for failing to call character witnesses regarding his reputation for "truthfulness."   In ***Commonwealth v. Kennedy***, 151 A.3d 1117 (Pa.Super. 2016), this Court discussed the admissibility of character evidence regarding truthfulness.   We explained the circumstances in which evidence regarding a defendant's truthfulness is admissible as follows:

> [T]his Court has stated that, when truthfulness is not relevant to the underlying criminal offense, a defendant may only call witnesses to testify as to his or her truthfulness when (a) he or she chooses to testify on his or her own behalf, and (b) the Commonwealth attacks the defendant's truthfulness through either cross-examination or by other witness' testimony.   Thus, this Court has held that "where the prosecution has merely introduced evidence denying or contradicting the facts to which the defendant testified, but has not assailed the defendant's community reputation for truthfulness generally, evidence of the defendant's alleged reputation for truthfulness is not admissible."
>
> In other words, [Pennsylvania Rule of Evidence] 608(a) permits a testifying defendant to call witnesses to testify as to his or her truthful character whenever the Commonwealth attacks his or her general reputation for truthfulness during trial.   Conversely, Rule 404[(a)(2)(A)] permits a defendant (testifying or non-testifying) to call witnesses to testify as to his or her truthful character when

the defendant's reputation for truthfulness is pertinent to the underlying criminal offense, *e.g.*, perjury.

*Id.* at 1128 (internal citations omitted). Accordingly, "the term 'pertinent' refers to a character trait that is relevant to the crime charged against the accused." *Minich*, 4 A.3d at 1071. Because Beck was convicted of indecent assault and corruption of minors, and truthfulness is not pertinent to either offense, he was not entitled to present witnesses regarding his character for truthfulness under Rule 404(a)(2)(A).

We turn now to the question whether Beck was entitled to present testimony from character witnesses as to truthfulness under Rule 608. Beck relies upon our Supreme Court's decision in *Commonwealth v. Fulton*, 830 A.2d 567 (Pa. 2003). In *Fulton*, after this Court affirmed the appellant's judgment of sentence, Fulton filed a PCRA petition alleging that trial counsel had been ineffective for failing to present evidence of the appellant's good reputation for truthfulness. *Id.* at 569. This Court affirmed the PCRA court's dismissal of the petition, and noted that character evidence for truthfulness was admissible in only two circumstances, where: "(1) the character trait of truthfulness is implicated by the elements of the charged offenses; or (2) the defendant's character for truthfulness was attacked by evidence of bad reputation." *Id.* The Supreme Court granted discretionary review to resolve the question of trial counsel's alleged ineffectiveness. In the opinion announcing the judgment of the court, then-Justice Castille observed that:

> It has long been the law in Pennsylvania that a defendant in a criminal case may introduce evidence of his reputation for truthfulness in but two circumstances. First, the accused may introduce evidence of his truthful character if the trait of truthfulness is relevant to the crime with which he has been charged. . . . Second, the accused may introduce evidence of his truthful character if his reputation for truthfulness has first been attacked by the prosecution.

*Id.* at 572. Then-Justice Castille concluded that "[i]n the absence of any effort by the prosecution to impeach [the] appellant's general reputation in the community for truthfulness, evidence of [his] alleged good reputation for veracity was inadmissible at his trial." *Id.* at 574. Then-Justice Castille disagreed with the appellant's suggestion that, even in situations where truthfulness is irrelevant to the defendant's charges and his general reputation for truthfulness has not been attacked, the defendant may introduce evidence of his truthfulness whenever the credibility of his testimony has been challenged or contradicted by the Commonwealth. *Id.* at 575.

Now-Chief Justice Saylor dissented, and, in reasoning adopted by four members of the Court[2] and consistent with the language of Rule 608,[3]

---

[2] The trial court concluded, incorrectly, that the only circumstances in which a defendant's reputation for truthfulness are admissible are those contemplated by the opinion announcing the judgment of the court. *See* Mem. Order Denying PCRA Petition, 9/22/16, at 3-4.

[3] At the time Fulton was decided, Rule 608 provided, in relevant part:

(a) Reputation Evidence of Character

suggested "a more flexible approach, which would allow the trial court to permit rehabilitative evidence in limited situations where it believes that the witness's character for veracity has been impugned." *Id.* at 578 (Saylor, J., dissenting). These situations could include vigorous cross-examination or statements made in opening arguments, where a "witness's character is attacked by questions that are directed at an issue in the case, but nevertheless have the actual effect of assailing the witness's veracity." *Id.* at 577-78 (Saylor, J., dissenting).

---

> The credibility of a witness may be attacked or supported by evidence in the form of reputation as to character, but subject to the following limitations:
>
> (1) the evidence may refer only to character for truthfulness or untruthfulness; and
>
> (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise.

Pa.R.E. 608(a) (2003).

In 2013, Rule 608, along with the other Pennsylvania Rules of Evidence, was amended for stylistic reasons, with no intent to change the substance, to provide in relevant part:

> **(a) Reputation Evidence.** A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked. Opinion testimony about the witness's character for truthfulness or untruthfulness is not admissible.

Pa.R.E. 608(a).

- 10 -

In *Fulton*, "the prosecutor used a specific instance of untruthfulness, with limited relevance to the crime to which [the appellant] had been charged, to establish [his] character for untruthfulness," which included using the words "lied" or "lie" repeatedly on cross-examination and in her closing argument. *Id.* at 577-78. Chief Justice Saylor concluded that "[g]iven the net effect of these statements" he could not conclude that the appellant's ineffectiveness claim lacked arguable merit. *Id.* at 579.

Beck argues that the Commonwealth placed his "veracity" at issue by "vigorously cross-examin[ing]" him regarding the differences between his account of the facts and the Victim's account. Beck's Br. at 19-20. Beck also contends that the Commonwealth "emphasized in its closing argument . . . that [this case] is essentially a determination of credibility between the complainant and [Beck], and concluded that [Beck] was not to be believed." *Id.* at 20. After reviewing the record, including the Commonwealth's cross-examination of Beck and its closing argument, we conclude that the Commonwealth neither attacked Beck's reputation for truthfulness nor assailed his character for veracity in the way envisioned by Chief Justice Saylor. Cross-examination, as occurred here, that merely suggests that a defendant has an understandable motive to deny culpability does not constitute an attack on a defendant's proclivity for truthfulness generally. The net effect of the challenged statements falls short of the situation contemplated by Chief Justice Saylor.

Thus, Beck was not entitled to present evidence regarding his character for truthfulness under Rule 608. Because the testimony Beck sought to introduce regarding his reputation for truthfulness was inadmissible, his underlying claim lacks arguable merit. The PCRA court therefore did not err in dismissing Beck's ineffectiveness claim based on trial counsel's failure to call witnesses regarding Beck's character for truthfulness.

## II. Appropriateness around Children and Self-Control

We next address Beck's claims that trial counsel was ineffective for failing to call character witnesses regarding Beck's reputation for "appropriateness around children" and "self-control." Regarding Beck's reputation for "appropriateness around children," the PCRA court found that the underlying claim lacked arguable merit because none of the proposed character witnesses' testimony regarding Beck's "appropriateness around children" would have been admissible at trial. After reviewing the certified record, the parties' briefs, and the relevant law, we agree with and adopt the PCRA court's reasoning. Mem. Order Denying PCRA Petition, 9/22/16, at 4-6 ("Order"). Specifically, the PCRA court found that the proposed testimony of witnesses Kenneth Sanders and James Driskell regarding Beck's "appropriateness around children" consisted of testimony about specific instances of conduct and the witnesses' opinion, which are inadmissible to prove character. *See* Pa.R.E. 405. Further, the PCRA court found that the proposed testimony of Carlos Beck was not responsive to the question of

Beck's reputation for "appropriateness around children." In addition, trial counsel testified at the PCRA hearing as follows:

> Q. How about appropriate interactions with minor children?
>
> A. Again, not something that there would be a reputation. It would be more evidence of specific instances. He's been a teacher for 20 years and never had a problem. It's specific instances here. It's not a reputation.

N.T., 6/20/16, at 63. Thus, counsel had a reasonable basis for not calling character witnesses regarding Beck's reputation for "appropriateness around children" because he did not believe there was evidence of this character trait other than inadmissible specific instances of conduct.

With regard to Beck's character for "self-control," the PCRA court similarly observed that the testimony of Beck's proposed character witnesses would not have been admissible at trial, as the witnesses' proposed testimony regarding "self-control" was not proper character evidence regarding Beck's reputation in the community, but rather was "either personal opinion, or . . . based on specific incidents of conduct and not on general reputation." Order at 9. Accordingly, Beck's underlying claim lacks arguable merit.

Thus, Beck's trial counsel was not ineffective for failing to call character witnesses regarding his reputation for either "appropriateness around

children" or "self-control" and the PCRA court did not err in dismissing these claims.[4]

## III.  Peacefulness

Beck's final claim is that trial counsel was ineffective for failing to call character witnesses regarding his reputation for "peacefulness."  "In a case where the crime charged is one of violence, evidence of reputation for non-violent behavior is admissible."  **Harris**, 785 A.2d at 1000.  The PCRA court found: "In this case, there were no allegations that [Beck] employed force, coercion, or inflicted physical pain or injury on the Victim.  Instead, the charges were based on [Beck]'s inappropriate touching/fondling of the Victim's genitals."  Order at 7.  Because corruption of minors and indecent assault as alleged here are not crimes of violence, and because there was no allegation that Beck acted violently toward the Victim, any evidence regarding Beck's reputation for non-violent behavior/peacefulness would have been irrelevant, and, thus, inadmissible at trial.  **See** Pa.R.E. 402 ("Evidence that is not relevant is not admissible.").  Thus, this claim lacks arguable merit and the PCRA court did not err in dismissing Beck's ineffectiveness claim.

_____

[4] Although it is difficult to envision a reputation for these traits that does not consist of simply listing specific instances of conduct, because we agree with the PCRA court that Beck's proposed character evidence regarding these traits was inadmissible, we need not reach the question whether these traits are pertinent to Beck's offenses under Rule 404.  **Cf. Reyes-Rodriguez**, 111 A.3d at 782 n.6 (noting that "[a] person's reputation as a good father or caretaker may be pertinent to rebut a charge that a person sexually abused children under his care").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/12/2017