Commonwealth *v.* Weiner and Zvon, Appellants.

578

Argued March 11, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, RHODES and KENWORTHEY, JJ.

*Philip Dorfman,* with him *Oscar G. Wickersham,* for appellants.

*James W. Reynolds,* Assistant District Attorney, with him *Carl B. Shelley,* District Attorney, and *E. LeRoy Keen,* First Assistant District Attorney, for appellee.

OPINION BY BALDRIGE, J., April 29, 1942:

These appeals are from sentences imposed after conviction in the court below on five separate indictments, Nos. 125, 126, 127, 130, and 131, September Term, 1940.

Max Weiner, one of the appellants, was charged in indictment No. 125 with procuring signatures to a nomination paper of the Communist Party by false and fraudulent statements, and in indictment No. 126 with making false statements in the affidavits required to be appended to the nomination papers. Stephen Zvon, the other appellant, was charged in two indictments, Nos. 130 and 131, with the same offenses. Weiner, Zvon, and Oliver Milton were charged in indictment No. 127 with conspiracy to procure signatures to Communist nomination papers by false statements and representations with the intent to prevent a free and pure election. Weiner and Zvon were found guilty as indicted and Milton was found not guilty.

These prosecutions grew out of alleged violations of the Pennsylvania Election Code, approved June 3, 1937, P. L. 1333, 25 PS §2600 et seq. Sometime prior to 1940 the candidates of the Communist Party in this state failed to receive the minimum number of votes necessary to give that party the right to nominate its candidates at a primary election. Hence it was not a "political party" within the definition of that term in sections 102 (n) and 801 (a) and (b) of the Election Code of 1937, and became a "political body" as defined

in sections 102 (p) and 801 (c). It was required, therefore, to nominate its candidates by nomination papers as provided in Article IX, (b) of the Code, 25 ps 2861 et seq.

Weiner, the State Legislative Secretary of the Communist Party of Pennsylvania, undertook to secure signatures of qualified electors of Dauphin County to the nomination papers to put candidates on the official ballot at the general election. He secured the defendants Zvon and Milton to help him. During the month of March 1940, these defendants solicited signatures of a large number of people, seventy-five or more of whom were called as witnesses at the trial. The judge in referring to them in his opinion, said: "Not more than one or two of the witnesses were of average intelligence, most of them below the average. Some of them could not read or write."

About two months after these nomination papers had been circulated a Harrisburg newspaper published the names of the signers and stated that they had been deceived as to the purpose of these papers. Later the appellants were arrested, indicted, tried, and convicted. Every one of these witnesses, with one or two exceptions, said that he or she was not told, and did not know, it was a nominaton paper to place the candidates of the Communist Party on the ballot; that representations were made by the appellants that the petition was for the purpose of getting higher W. P. A. wages, more relief money, keeping United States out of war, improving the conditions of the poor, etc., which had no real relation to the actual purpose of the petitions. In some instances the appellants acted separately and in others they worked together in obtaining signatures.

The appellants' first, and probably their chief, complaint is that the Commonwealth's evidence, consisting of testimony of individuals who signed the nomination papers at different times and places and under different circumstances, did not establish that these ap-

pellants entered into an express agreement with a criminal intent, and, therefore, failed to support the charge of conspiracy.

The Commonwealth was not required to prove an express agreement. It is very rare that a formal or explicit agreement can be proved in a conspiracy case. Invariably the Commonwealth's case depends upon the attending circumstances: *Commonwealth v. Strantz*, 328 Pa. 33, 195 A. 75; *Commonwealth v. Tilly*, 33 Pa. Superior Ct. 35; *Commonwealth v. Kelson*, 134 Pa. Superior Ct. 132, 3 A. 2d 933. "The joint assent of minds required to sustain a charge of conspiracy may be inferred from facts which establish ...... that the conspiracy had been formed." *Commonwealth v. Jermyn et al.*, 101 Pa. Superior Ct. 455, 465, 478.

Many of the witnesses testified that practically the same representations, methods of approach, etc., were made by both of these appellants to obtain the signatures. In *Commonwealth v. Antico et al.*, 146 Pa. Superior Ct. 293, 22 A. 2d 204, (an allocatur was refused by the Supreme Court) the facts strikingly resemble those before us. We there said, p. 327: "The method used by all those circulating the petitions to obtain signatures was so similar that it is inconceivable that the defendants' conduct could be attributed to a coincidence rather than to a general agreement between them knowingly to make untrue and fraudulent statements as an inducement for the electors to sign the petitions, and thereafter to make false affidavits thereto."

The appellants contend that by this language we enunciated a new doctrine in the law of conspiracy. We do not consider what was said there novel or in conflict with former decisions of the appellate courts. It has been consistently and repeatedly held that the acts of the parties may show that there was a concerted action pursuant to a common design to accomplish a common purpose: *Commonwealth v. Jermyn et al.*,

supra, p. 465. In *Commonwealth v. Snyder*, 40 Pa. Superior Ct. 485, 523, after stating that the commonwealth was not required to show that the defendants acted jointly or at one time, we said: "When two or more persons pursue by their acts the same object, often by the same means, one performing one part of an act, the other another part of the same act, with a view to complete it, and with a view to attaining the object which they are pursuing, the acts of each must necessarily be proved separately, and where there is a charge of conspiracy the acts of each, with regard to the subject-matter of the charge, are always evidence against that particular defendant." See, also, *Commonwealth v. Zuern*, 16 Pa. Superior Ct. 588, 600; and *Commonwealth v. Rhey et al.*, 140 Pa. Superior Ct. 340, 14 A. 2d 192.

The appellants, relying upon *Commonwealth v. Kirk et al.*, 141 Pa. Superior Ct. 123, 14 A. 2d 914, contend that this court in the Antico case, and the lower court in the instant case, ignored the distinction between an agreement to commit an illegal act, and where the act was legal but performed in an unlawful manner. We said in the Kirk case, p. 138: "If the combination is formed for the purpose of committing a crime—as distinguished from an act merely illegal,— if there be a direct intention that a crime should be committed, whether it be a crime at common law or by statute, the corrupt motive or criminal intent is necessarily present, for there can be no innocent motive in a combination entered into to commit a crime. But if the combination is to do something unlawful, but not criminal, or to do something not itself unlawful by unlawful means, before the jury can convict of a criminal conspiracy they must be satisfied, from all the attending circumstances, and beyond a reasonable doubt, of the criminal intent or corrupt motive of those entering into the combination, or of at least two of them, whom they convict." We find no incompatibility whatever in these cases.

The Commonwealth contended that its evidence, although circumstantial, was sufficient to show that these appellants had combined together to commit a crime at common law to prevent a free and pure election by securing signatures to nomination papers by means of false and fraudulent statements. The respective contentions of the Commonwealth and the defendants raised issues of fact which the learned trial judge very properly submitted to the jury, and their verdict showed that they concluded that the evidence established the guilt of Weiner and Zvon. We find no foundation to support the argument that the evidence was not sufficient to establish a criminal conspiracy.

The next proposition advanced is that the learned trial judge erred in consolidating all the indictments for trial. The appellants concede that in view of our decision in the Antico case this point is only subsidiary to the one heretofore discussed. While the crimes charged were separate offenses, they were closely related, having grown out of the alleged conspiracy. The court followed the usual practice of consolidating the indictments charging offenses committed in consummation of a corrupt agreement: *Commonwealth v. Cauffiel*, 97 Pa. Superior Ct. 202. The trial judge can best determine whether a number of bills of indictment should be consolidated and the discretion he exercises concerning that matter will not be reversed unless it is made clear to us that the rights of the defendants have been prejudiced thereby: *Commonwealth v. Tracey*, 137 Pa. Superior Ct. 221, 8 A. 2d 622. See, also, *Commonwealth v. Quinn*, 144 Pa. Superior Ct. 400, 406, 19 A. 2d 526. The judge was entirely warranted in this instance, where all the evidence that was admissible on the crimes charged in the other indictments tended to support the conspiracy charge, in ordering a joint trial.

The appellants complain that the judge erred in stating to the jury: "If they [witnesses] had been told

about the Communist Party and its principles would they have come to testify here with such lack of information as to even the name. You take that into consideration." To determine whether this criticism is well taken it is necessary to refer to previous statements made by the judge immediately before those quoted. We find there that he called to the jury's attention that 46 of the Commonwealth's witnesses had testified respecting declarations made to them when they were requested to sign the nomination papers; that approximately 40 of them said the Communist Party was not mentioned; and that they were unaware they were signing such a petition until they learned of that fact through the newspaper. The Court then proceeded: "You have seen the witnesses, and you are able to judge what credence you put upon their testimony. A number of them, as you will recall, said they were surprised, they had not heard anything about the Communist Party. One witness, as I recall, said he didn't know anything about, had not heard the name Communist, until he came into Court, or she came into court; and you will recall that they could not even pronounce the name in a number of instances, some called it the community party, and some communion party, but they did not know what the Communist Party was. Now you will have to take that into consideration." Then followed the portion of the charge to which the appellants make complaint.

We do not interpret the language complained of as placing "too great a burden upon the appellants." The jury was simply told that they could infer, in view of the witnesses' lack of information, that they had not been told of the nature of the papers they signed. We find nothing unfair, improper, or prejudicial to the defendants in thus referring to the testimony.

There was further criticism that undue emphasis was given by the trial judge to the testimony offered by the Commonwealth, and that he minimized the testi-

mony offered in behalf of the defendants. The jury was expressly cautioned by the judge in the early portion of the charge that he would not refer to all the testimony and in so far as he did mention it undue stress should not be laid thereon, as it was the duty of the jury to consider all the evidence and give every part the weight to which, in their judgment, it was entitled. Allusion to all the evidence is not required, but it is desirable when a large amount of testimony is taken, as here, to make enough reference thereto that the jury may be assisted in recalling it as a substantial whole.

We have read the charge with care but we failed to find that too much attention was given to the Commonwealth's testimony or that the defendants' was neglected, nor did we discover any expressions therein indicating the judge's personal views respecting the verdict to be returned. Fair and reasonable comments were made upon the evidence for the apparent purpose of clarifying the issues and helping the jury, after a long trial, to recall the more important features of the testimony. Several times the jury was reminded that it was for them to say who was telling the truth or falsifying, and that it was their responsibility to determine the guilt or the innocence of the defendants. In our judgment this charge fully meets all legal requirements.

Fault was found also with the judge's charging the jury as follows: "It was suggested that they [signers of the petitions] were intimidated. Well, in passing it is fair to you to say there is not the slightest evidence of intimidation by any of the officers of the law; ......" The defendants took the position that the prosecutions were brought about on the part of the newspapers, detectives, and police officers who intimidated witnesses by fear and prejudice. In support of this contention the appellants refer to the testimony of Pearl Hoyles who testified that a county detective said to her that it was not right for her to sign the petition. This

witness, upon whose testimony they mainly rely, testified on cross-examination in favor of the defendants. We fail to find a bit of evidence in this record which justifies the charge that Pearl Hoyles, or any other witness called by the Commonwealth, was influenced in giving testimony by intimidation or threats.

The appellants assert that the lower court erred in rejecting their offer to prove that the police officers and detectives had been guilty of improper conduct in that they approached certain persons who signed the nomination papers, but were not called as witnesses by the Commonwealth, and inquired of them whether they had read the petitions and if the defendants had fully explained the contents thereof, and were further questioned if they desired to support a move to overthrow the Government of the United States and have foreign rule in this country. The issue was not whether some of the signers were told of the purpose of the petitions, but whether the signatures of those called as witnesses were secured by misrepresentation or fraud. None of the witnesses whose testimony was rejected saw or knew the circumstances attending the signing of the nomination papers by others, nor was it suggested that any of them would testify that the witnesses called by the Commonwealth had been intimidated by the officers. This character of testimony was purely negative and was properly excluded.

The last position taken by the appellants is that the Commonwealth's evidence was obtained under circumstances amounting to a denial of due process of law as the witnesses were secured as a result of fear and intimidation, causing them to conceal the entire truth with the result that the defendants' constitutional rights were violated. There is not the slightest justification for this complaint. The only case cited by the appellants in support of this contention is *Brown v. Mississippi,* 297 U. S. 278. 56 S. Ct. 461, 80 L. Ed. 682. There Brown and two others were charged with, and con-

victed of, murder. The conviction rested solely upon confessions shown to have been extorted by officers of the state by brutality and violence. The court held that the conviction and sentence were void for want of essential elements of due process. Here, there was no proof of coercion or of improper conduct by anyone in connection with the trial. The defendants had the advantage of all the rights and safeguards given them by our law and the Constitution. The jury having determined, after a full presentation of the testimony on both sides, that the defendants were guilty as indicted, we find no reason to interfere with their conclusion.

Judgment in each of the five appeals is affirmed and each of the appellants, Max Weiner and Stephen Zvon, shall appear in the court below at such time as the said court shall fix and be committed by that court until he has complied with the sentence, or any part of it which had not been performed at the time these appeals were made a supersedeas.