## Commonwealth *v.* Hall, Appellant.

286

Argued March 26, 1953. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, GUNTHER and WRIGHT, JJ.

*C. William Kraft, Jr.* and *William H. Turner,* with them *Robertson & Turner,* for appellants.

*J. Harold Hughes,* Assistant District Attorney, with him *Raymond R. Start,* District Attorney and *Joseph E. Pappano,* First Assistant District Attorney, for appellee.

OPINION BY HIRT, J., July 14, 1953:

The present appellants, with George W. Mayo, were charged with conspiring with each other "to erect, set up, open, make or draw a lottery". They along with Mayo were convicted by a jury and were sentenced. In each of these appeals it is contended that the evidence is insufficient to sustain the conviction. The charge of conspiracy relates to a numbers lottery within the provision of §601 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4601.

A confederation and agreement to effect an unlaw‹ ful object seldom can be established by direct testimony as to its precise terms. The agreement nevertheless may be inferred from the acts of the parties, under the circumstances. *Commonwealth v. Mittelman et al.,* 154 Pa. Superior Ct. 572, 580, 36 A. 2d 860. "It has been consistently and repeatedly held that the acts of the parties may show that there was a concerted action pursuant to a common design to accomplish a common purpose": *Commonwealth v. Weiner & Zvon,* 148 Pa. Superior Ct. 577, 581, 25 A. 2d 844. "Where the acts of the parties indicate that they were acting in concert to a common end, the jury properly may be permitted to infer that the concerted action was the result of an unlawful agreement": *Commonwealth v. Rosen et al.,* 141 Pa. Superior Ct. 272, 14 A. 2d 833. And the general rule is that when several persons have conspired together to commit an unlawful act, the acts and declarations of the members of the conspiracy, in further- ance of the common purpose, are original evidence against all of the other associates in the conspiracy agreement. *Com. v. Jermyn,* 101 Pa. Superior Ct. 455; *Commonwealth v. Weiner & Zvon,* supra. The testi- mony of the acts of the appellants, and of Mayo, in this case established the existence of a conspiracy and

was competent proof that appellants were parties to the conspiracy agreement.

The neighborhood of Tenth and Forrester Streets in the Borough of Darby was the field of activity of appellants Murray and Hampton as well as of Mayo. In the rear of a taproom on the southeast corner of the intersection there was a so-called "trellis" and in the trellis on each of the several days referred to in the Commonwealth's testimony there was a brown bag in which number slips were deposited by writers and which ultimately was to be conveyed to the pay-off headquarters of the lottery. It is the acts of the appellants in relation to the brown bag that undoubtedly was accepted by the jury as evidence of unity of purpose spelling an agreement among them to violate the law.

During the morning of May 24, 1952, the appellant Hampton was observed in conversation with a number of white and colored people near the corner of Tenth and Forrester Streets in the Borough of Darby. He took money from a fish man and an ice man, among others, and gave each of them a carbon copy slip from a book in which he had made a notation. A trolley car stopped in front of the taproom and after Hampton took money from the conductor in exchange for a slip, he went to the trellis and there talked with a number of other persons and took money from them also and in each instance delivered a slip from his book. He took the brown bag out of the trellis several times during that morning and was seen there in conversation with Murray and Mayo. Hampton gave 939 Maple Terrace as his address. On May 27th State police officers arrested him there and in a search of the premises on a search warrant found numbers slips and a book similar to those used by numbers writers. On Hampton's admission that he lived in the house, what the officers found there was clearly competent evidence.

The significance of the evidence of what they found and the extent to which it incriminated Hampton however were questions for the jury and were properly submitted.

A State police officer saw appellant Murray also, on the morning of May 24th. He was observed going back to the trellis six times within three quarters of an hour where he on each occasion took the brown bag down from the trellis and put yellow slips into it. He also took the bag into the taproom several times and in each instance returned it to the trellis.

On the same day defendant Mayo was observed going to the trellis several times and at 1:20 p.m. he took the bag and walked away with it. And on May 26th, he took a similar bag with him from the trellis and was seen to give it to a man in a Chevrolet car on Ridge Avenue nearby who drove off with it. On May 27th the police officers again observed Mayo at the trellis about 1:00 p.m. when he took a brown bag from the trellis and walked away with it under his coat. The officers followed him and took the bag from him on the street about 1½ blocks from the trellis and there placed him under arrest. At that juncture appellant Hall appeared driving a Chrysler coupe and in a conversation with the officers Mayo there identified Hall, and in Hall's presence said that "He was the man he [Mayo] was expecting to come along and take the bag from him with the number slips and take the bag to the bank in Philadelphia". Although Hall then denied Mayo's statement, after his arrest on May 27th he admitted to one of the officers in the District Attorney's office that Mayo had turned slips over to him more than ten times. He also admitted "handling numbers" but then indicated that he would not answer any more questions. In the bag taken from Mayo there were

slips evidencing 6,088 number bets for a total of $678.48 on that day.

On May 27th appellant Mayo made a voluntary confession in the District Attorney's office in which he admitted his guilt in participating in the lottery at Tenth and Forrester Streets over a period of about three months, and he indicated that he would plead guilty to the charge. According to his confession he wrote numbers in that neighborhood and deposited the slips evidencing the transactions in a brown bag at the trellis. In confederation with the others operating the lottery, he assumed the responsibility for delivering the bag to some one who would take it to "the bank". The person designated by headquarters was one "Reds" whom Mayo identified as appellant Hall. By appointment with him by telephone Mayo turned a bag over to Hall daily containing slips evidencing "close to 2000" plays each day. During the questioning of Mayo in the course of his confession of guilt, defendant Hall was brought into the District Attorney's office and when Mayo again identified Hall as the man to whom he had been turning over the bags containing the days bets, Hall did not deny the accusation. Mayo's statements in the presence of Hall incriminating him as a party to the conspiracy, and charging him with a substantive offence in violation of §601 of The Penal Code, called for a denial by him. His failure then and there to contradict or challenge the aspersions, since he was at liberty to speak, was an implied admission of the truth of the charges then made. *Commonwealth v. Vallone*, 347 Pa. 419, 32 A. 2d 889.

The trial judge adequately defined the charge of conspiracy. Section 302 of The Penal Code of 1939, supra, 18 PS §4302, provides: "Any two or more persons who falsely and maliciously conspire and agree to cheat and defraud any person of his moneys, goods,

chattels, or other property, or do any other dishonest, malicious, or unlawful act *to the prejudice of another,* are guilty of conspiracy, a misdemeanor, . . ." (Emphasis added). There is no merit in appellant's criticism of the charge of the court in the failure of the trial judge to comment on the significance of the phrase in the above statutory definition of conspiracy which we have italicized. Section 601 declares all lotteries to be common nuisances. No one on the jury in these cases could have failed to apprehend the essentials of the offense charged. Common nuisances generally, and the operation of numbers lotteries in particular in their very nature, are prejudicial to all who are duped by them. Under a charge of conspiracy to commit an offense defined in §601 of The Penal Code a conviction necessarily implies a finding by the jury of a confederation to commit a common nuisance to the prejudice of those who gamble in numbers lotteries.

There is nothing calling for comment in any of the other questions raised by any of the appellants in these appeals. There is no merit in them.

The judgments of sentence in the appeals of Edward Hall, Claude F. Murray and Henry Hampton, to numbers 84, 86 and 87 October Term, 1953, are severally affirmed and it is ordered that each of them appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it which had not been performed at the time supersedeas was granted.

Hall was also found guilty on a second indictment charging him with being concerned in the managing, conducting or carrying on a lottery in violation of §601, supra. The lower court suspended sentence. Although the defendant was tried and convicted he has no standing to appeal since no final judgment was en-

tered against him. *Commonwealth v. Graham,* 170 Pa. Superior Ct. 343, 85 A. 2d 632. Cf. *Commonwealth ex rel. Holly v. Ashe,* 368 Pa. 211, 82 A. 2d 244. Accordingly the appeal of Edward Hall to 85 October Term, 1953, is dismissed.