## Commonwealth *v.* Yarmark, Appellant.

Argued October 10, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

278

*Morris Ploscowe,* with him *H. Thomas Pyle,* and *Brown, Swope and MacPhail,* for appellant.

*Daniel E. Teeter,* District Attorney, for appellee.

OPINION BY HIRT, J., January 21, 1958:

On February 13, 1956, the defendant, intending to buy a new Cadillac automobile, entered into a conditional sales contract with the dealer for $3,932.64, the amount of the unpaid purchase price, payable in 18 installments of $218.48 per month. The car was delivered to him but under the contract title to the car remained in the dealer, W. Raymond Black. Black assigned his interest in the contract to General Motors Acceptance Corporation. On April 10, 1956, by common consent, a different Cadillac automobile (the one here involved) was substituted for the car originally purchased, subject however to all of the terms, conditions, and schedule of payments of the remaining purchase price contained in the conditional sales contract. This substituted agreement was also assigned to General Motors Acceptance Corporation. The defendant defaulted his monthly payments due under the contract in March, in May 1956 and in subsequent months. He did make some payments thereafter, however, but when the financing company repossessed the car on October 11, 1956, the defendant was in arrears in the total sum of $658.44. Because of the failure of defendant to perform on his contract and the unsatisfactory status of

the account, General Motors Acceptance Corporation had elected to terminate the contract and defendant was notified to that effect. The automobile was repossessed by GMAC (as we will refer to the financing company) only after many futile attempts to contact the defendant. The corporation's agent, Woll, finally located the car on October 11, 1956 and after repossessing it stored it in a garage in Gettysburg operated by one C. W. Epley. On leaving the car with Epley he received from him storage Claim Check No. 43-585 in the usual form with the date "10-11-56" noted thereon. Woll notified Epley that the car was not to be removed from his garage except on surrender of the customer's portion of the claim check by one properly identified as a GMAC representative. Thereupon the registration plates were removed from the car and were returned to the defendant. Epley, as a precaution against unauthorized removal, deflated one front and one rear tire and removed a distributor wire from the engine. Woll then reported to his superior GMAC officer in Harrisburg and delivered the claim check to him.

One Vernon Thompson had worked for Epley for a number of years. On October 12, 1956, the defendant with one Miller, his chauffeur, talked with Thompson and again on October 15. As a result it was arranged among them that Thompson (when the opportunity was afforded without danger of being observed) would put air in the deflated tires and would have a new coil wire installed, which the defendant obtained in Harrisburg, thus readying the car for removal on its own power. According to Thompson and Cullison, another employe in the Epley garage, the defendant agreed to pay Thompson $25 for helping him get the car out of the garage. On October 17, Cullison with the defendant and Miller his chauffeur, left defendant's home in As-

pers, Adams County with the intention of removing the Cadillac automobile from the Epley garage. When they arrived in Gettysburg defendant sent Miller and Cullison to get a Ford automobile owned by a Miss Oates. When they returned with the Ford it was driven to the Epley Garage. Defendant then went up the steps into an apartment house across the street from the windows of which he could look into the Epley Garage and determine when the "coast was clear". He had told Cullison to follow Epley who, later reported that Epley was on the golf course. In the meantime Thompson, in order to account for the removal of the car from the garage had taken claim check No. 43-685 from a pack of similar storage tickets intended for future use. The number of the check selected was exactly 100 higher than the number on the original claim check delivered to GMAC on receiving the Cadillac car for storage. Thompson wrote the figures "10-11-56" on both parts of the spurious check and later gave the customer-part of the storage ticket to Cullison or Miller who delivered it to defendant, for presentation by him to another employe at the garage, in the attempt to get possession of the car. The other half of the spurious check was placed on the defendant's key ring hanging in the office of Epley's garage in place of the original which was removed and destroyed. The license plates from the Ford automobile were put on the Cadillac. Defendant paid the storage charges of $6 which was placed in the cash register along with the faked claim check. Defendant had instructed Thompson to say that a tall, thin, blond with a crew hair cut came in and presented the necessary credentials and the check. But it was defendant himself who drove the Cadillac from the garage and proceeded on to Westminster, Maryland, about 25 miles from Gettysburg. There he had some minor repairs made to the car and

Miller, by prior arrangement, met the defendant there. They later left the Cadillac in Westminster and drove to Harrisburg in Miller's car. The defendant then went to the GMAC office in Harrisburg and notified one Patterson who was in charge that he had possession of the car. He had with him a certified check in the amount of the past-due installments and he insisted that GMAC accept the check and reinstate the conditional sales contract; this was refused. At no time did defendant offer to return the Cadillac and he refused to tell where he had stored it. Patterson then notified Epley that GMAC still had the original claim check and that Epley would be held responsible for the payment of the remaining total unpaid purchase price of the car. Thereupon Epley brought these prosecutions; they were consolidated for trial and defendant was convicted on all of them as charged in ten counts of the indictment.

Defendant was sentenced on his conviction for the charges of bribery of an employee, and of removing property from the county to defraud creditors, to a fine and imprisonment for concurrent terms of from three to six months in the Adams County Prison. These are the only judgments with which we are concerned in these appeals, since sentence on all other convictions was suspended. *Commonwealth v. Hall*, 173 Pa. Superior Ct. 285, 98 A. 2d 386; *Commonwealth v. Graham*, 170 Pa. Superior Ct. 343, 85 A. 2d 632.

All of the offenses with which defendant was charged were alleged to have been committed at the same time or in succession. There however was no merger (*Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 21 A. 2d 920) since the charges were of distinct crimes, under definitions of The Penal Code of June 24, 1939, P. L. 872 (*Com. ex rel. Comer v. Claudy*, 174 Pa. Superior Ct. 494, 102 A. 2d 227; *Com.*

*ex rel Burge v. Ashe,* 168 Pa. Superior Ct. 271, 77 A. 2d 725) although they all were based upon the defendant's unlawful acts in regaining possession of the Cadillac automobile. The consolidation of charges of separate and distinct offenses is largely within the discretion of the trial judge and the defendant was not prejudiced by the consolidation, on the trial of the two charges with which we are here concerned. He therefore may not complain on that score. *Commonwealth v. Kaysier,* 166 Pa. Superior Ct. 369, 71 A. 2d 846; *Commonwealth v. Lehman,* 166 Pa. Superior Ct. 181, 70 A. 2d 404; *Commonwealth v. Ackerman,* 176 Pa. Superior Ct. 80, 106 A. 2d 886.

Under §667 of The Penal Code of 1939, 18 PS §4667, one who "offers or gives to any . . . employe, or servant of another . . . money, property, or other valuable thing, without the knowledge and consent of the principal, employer, or master, as an inducement, bribe or reward for doing or omitting to do any act . . . in relation to the affairs or business of his principal, employer or master . . ." is guilty of the misdemeanor there defined. The evidence clearly supports defendant's conviction of the offense. There is abundant credible evidence that defendant offered to pay Thompson $25 (and although defendant denied the offer, he admitted the promise of a wedding present) in return for Thompson's assistance in regaining possession of the automobile.

As to the validity of the other conviction with which we are concerned, for removing or secreting property to defraud creditors in violation of §886 of the Code, 18 PS §4886, there can be no question, for after his arrest the defendant admitted to the district attorney that he had regained possession of the car in the manner above set forth. The intent to defraud was a reasonable inference for the jury from the circumstances of the retaking, as well as the subsequent concealment of

the Cadillac car in Maryland and the defendant's refusal to return it to GMAC or to divulge where it was stored.

Finally it is of no moment that GMAC ultimately accepted the defendant's certified check for the installments then in arrears and reinstated the conditional sales contract. In this connection Judge SHEELY, in refusing defendant's motion in arrest of judgment, said: "Taking the testimony in the light most favorable to the defendant, we have a situation where the car [was] repossessed and GMAC refused to reinstate the contract and insisted upon full payment of the balance due. The defendant thought that if he could get possession of the car and secrete it where it could not be found, GMAC would have no alternative than to reinstate the contract. Actually, it worked out that way. The branch manager of GMAC, Mr. Wheeler, testified that since Yarmark had the car there was not much else to do except to accept the additional check and to reinstate the contract. Under this view of the situation the defendant intended to force GMAC to give up its right to receive the unpaid balance on the contract or to dispose of the car for the payment of the unpaid balance. The jury, therefore, would have been justified in finding that the defendant did intend to deprive GMAC permanently of part of its property . . ." Defendant's right to possession of the car had terminated upon his default of his obligation under the conditional sales contract when the car was repossessed by GMAC and he no longer had any interest in the car when he took it from Epley's garage. The circumstances of the taking would have been sufficient to convict him of larceny; and certainly supports his conviction of the lesser statutory offense of Removing or Secreting Property to Defraud Creditors. Cf. Annotation, 58 A.L.R. 330; *Com. v. Chathams,* 50 Pa. 181.

Judgments of sentence are affirmed and it is ordered that defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentences imposed or any part of them which had not been performed at the time the appeal in this case was made a supersedeas.