Argued September 27, 1949.
Charles F. Hill, Jr., appeals from his conviction of having operated his motor vehicle as a common carrier within the Commonwealth of Pennsylvania without a certificate of public convenience or contract carrier permit, contrary to §§ 201(b) and 804 of the Public Utility Law.[1]
Ontario Land Company, pier 179 North, Philadelphia, is a lumber terminal for vessels arriving from the west coast. Ward Pollock, an investigator for the Pennsylvania Public Utility Commission, received a complaint about a carrier about to engage in transportation of lumber from pier 179 North, to Slatington, Pennsylvania, without proper certification from the Commission. After checking the registration of appellant's vehicle and the operator's license of its driver, Pollock went to the office of the Ontario Land Company and informed appellant that the driver of the vehicle would be arrested if the lumber were hauled. Appellant asked whether the owner might not accept the arrest so that the delivery of the lumber to Slatington would not be delayed. Thereupon, appellant followed Pollock to a police station at 11th and Winter Streets, Philadelphia, and posted bond for hearing. He now appeals from his subsequent conviction.
The lumber transported by appellant was shipped from the west coast via the SS Elmer Sperry to Blanchard Lumber Company of Philadelphia, a wholesale dealer. Prior to unloading the vessel, a portion of the lumber *Page 390 
was sold by Blanchard Company to the Kern Lumber Company of Slatington, a retail dealer. Appellant was engaged and paid by Blanchard Lumber Company to make delivery of the purchased lumber to the Kern Company. Appellant, under its own bill of lading showing the shipment of lumber from pier 179 North, in Philadelphia, to the Kern Lumber Company at Slatington, transported the lumber on March 9, 1949, to the Kern Company. The lumber was receipted for by the driver of appellant's vehicle and a representative of the Kern Company.
George W. Lewis, Jr., traffic manager of Blanchard Lumber Company, a witness for appellant, testified that the lumber was originally consigned to Blanchard Lumber Company. John J. Gibbons, general manager of Ontario Land Company, stated that the SS Elmer Sperry arrived at Pier 179 North on February 27, 1949; that more than 600,000 square feet of lumber were unloaded. Sidney R. Peters, an employe of Kern Lumber Company and a witness for the Commonwealth, stated that the lumber was purchased F.O.B. Slatington, and that the Kern Company paid the Blanchard Lumber Company the quoted price including transportation charges and such incidental charges as storage and insurance; that some of the lumber was ordered while in transit and another portion of lumber was ordered after the ship had docked. The pier is used by various wholesalers of lumber for storage and pick-ups. Lumber, after having been received by Ontario Land Company, is available at the yard upon presentation of a yard ticket by the interested party.
Appellant contends that (1) the transportation of the lumber by motor vehicle was interstate and therefore not within the jurisdiction of the Pennsylvania Public Utility Commission; and (2) the arrest was illegal. Neither of these contentions can be sustained. *Page 391 
The record establishes that the transportation of lumber from pier 179 North to Slatington constituted intrastate commerce; that the lumber purchased under two separate orders from Blanchard Lumber Company F.O.B. Slatington was a new movement between points solely within Pennsylvania. The negotiations of Kern Lumber Company were with Blanchard Lumber Company only. The yard ticket issued in connection with the shipment shows that the lumber was taken from the stock of Blanchard Lumber Company. The bill of lading issued for the transportation designated a haul from Philadelphia to Slatington. The orders in question were for only 31,400 square feet of the 600,000 unloaded from the ship. The remaining lumber in the yard belonged to Blanchard. The lumber was removed from the steamship by a stevedoring company to space assigned to Blanchard Lumber Company. Once removed to this space, the lumber was subject to the orders of Blanchard Lumber Company, as consignee, for future distribution and delivery. There is no evidence that the sale of the lumber in question referred to any particular lumber of any particular ship or from any source other than that of the Blanchard Lumber Company. The foregoing facts clearly establish that the transportation was not, as appellant contends, a continuation of an interstate or foreign shipment, but that it was solely intrastate.
Appellant's contention that there was continuity of movement between the original shipment by water and distribution by appellant is based primarily upon formal written "distributions" issued by Blanchard to Ontario Land Company, which purport to make the Kern Lumber Company the ultimate consignee. It is unnecessary to consider what the effect might be if such were the fact. There is no evidence of such "distribution" in the record. To the contrary, it appears that the lumber, after it had been deposited on the pier, was the property of the *Page 392 
Blanchard Lumber Company. It was their property for the purpose of sale and distribution. The court below therefore was not in error in holding that the interstate shipment ceased upon reaching the owner specified in the original contract of transportation. That transportation, as contracted, was for the shipment of lumber from the west coast to Philadelphia. There is not a scintilla of evidence to show that any other destination was intended. See Seaboard Air Line v. Lee,14 F.2d 439, 442, (affirmed 276 U.S. 591). In Gulf, Colorado andSanta Fe Railway Company v. Texas, 204 U.S. 403, the Court stated: "It is undoubtedly true that the character of a shipment, whether local or interstate, is not changed by a transfer of title during the transportation. But whether it be one or the other may depend on the contract of shipment." In the final analysis whether commerce is interstate or intrastate must be determined by the essential character of the commerce and not by billing or forms of contract. Cf. Chicago, Milwaukee St. Paul Railway Co. v. Iowa, 233 U.S. 334; Atlantic CoastLine Railroad Co. v. Standard Oil Co. of Kentucky,275 U.S. 257.
We have considered cases cited by appellant regarding a break in transportation. They are inapplicable for in the present case the contract of shipment had been completed in all respects. Danciger v. Cooley, 248 U.S. 319; RailroadCommission of Ohio v. Worthington, 225 U.S. 101; IllinoisCentral Railroad Co. v. Louisiana Railroad Commission,236 U.S. 157; B. O. v. Settle, 260 U.S. 166.
Appellant suggests that the Commonwealth of Pennsylvania has no jurisdiction over the subject matter. It is said that Congress has exercised its legislative supremacy through the Interstate Commerce Commission. Reliance is placed upon a letter to Blanchard Lumber Company by W.Y. Blanning, Director of the Bureau *Page 393 
of Motor Carriers of the Interstate Commerce Commission. The letter was in response to a request by Blanchard Lumber Company which request does not appear of record. Regarding lumber sold during the five day free delivery time, Blanning stated that it was "the position" of the Interstate Commerce Commission that it would "consider" that class of transportation to be in interstate commerce. He further stated: "However, it is possible that the State Commission or this Commission in a formal proceeding might adopt a different view, and if the matter is of sufficient importance it would have to be decided by the courts." This letter cannot be deemed to be an exercise of power by the Interstate Commerce Commission. It is unnecessary, therefore, to further consider this contention of appellant.
Finally, appellant contends that his arrest was illegal in that it was not an arrest "on view" within the meaning of the law. We need not pass upon this issue for appellant posted bond for a hearing. By so doing he waived any irregularities which might have existed in the arrest. In Commonwealth v. Gates,98 Pa. Super. 591, this Court reviewed the many authorities considering the effect of entering bail for appearance. It is clear that an infirmity in the arrest, if any there was, should have been raised in a proceeding to be discharged; having posted bond for appearance such defects must be deemed to have been waived. See Commonwealth v. Keegan, 70 Pa. Super. 436.
Judgment affirmed.
[1] Act of 1937, P. L. 1053, §§ 201(b), 804a, 1311, 66 P. S. § 1121
(b), 1304(a), 1501.