## Commonwealth *v.* Caserta, Appellant.

Argued October 1, 1954. Before Rhodes, P. J., Hirt, Ross, Gunther, Wright, Woodside and Ervin, JJ.

Sidney Ginsberg, for appellant.

J. Harold Hughes, Assistant District Attorney, with him Raymond R. Start, District Attorney and Joseph E. Pappano, First Assistant District Attorney, for appellee.

OPINION BY WOODSIDE, J., January 14, 1955:

This is an appeal from the judgments of sentences of the court of quarter sessions of Delaware County wherein the defendant was found guilty by a jury of conspiracy and setting up an illegal lottery.

An information was filed before a Justice of the Peace in Media, Delaware County and a warrant issued thereon. The defendant was arrested in Philadelphia by a State policeman who had the warrant. The defendant requested the arresting officer to take him before any magistrate in Philadelphia for a preliminary hearing. The officer, however, took him directly to the Justice of the Peace in Delaware County who had issued the warrant. The defendant asked for a continuance of the hearing to the following day so that he could obtain a stenographer to take notes of testimony. This was granted. A hearing was held the following day when testimony was taken to determine whether the defendant should be held for court. At the hearing the defendant asked to be discharged because he had not been taken before a Philadelphia magistrate. This request was refused; and the defendant was held for court. He thereupon posted bail for court.

After the Delaware County Grand Jury indicted the defendant he moved to quash the indictments on the ground that they were void because the Justice of the Peace in Delaware County had no jurisdiction to hear the case. After argument before the court en banc the motion was dismissed on opinion by Judge SWENEY.

The appellant contends that the court erred in dismissing this motion. He bases his argument on his interpretation of section 3 of the Act of March 31, 1860, P. L. 427, as amended, 19 PS §3 which authorizes an officer to whom a warrant is issued to arrest in any county of the Commonwealth the person against whom it is issued.

The section is verbose, and we shall not quote it verbatim because we think it can be stated more understandably, without doing any violence to its meaning, as follows:

In case any person against whom a warrant may be issued shall be in any county out of the jurisdiction of the magistrate, "it shall and may be lawful" for the person having such warrant to arrest such offender out of the jurisdiction of the magistrate, and to carry him before any magistrate in the county in which he is apprehended, and in case the offense is bailable by a magistrate, and such offender shall be willing and ready to give bail for his appearance at the next court of quarter sessions to be held where the offense was committed, such magistrate in the county where the offender was apprehended "shall and may take such bail for his appearance in the same manner" as the magistrate of the proper county might have done; and in case the offense shall not be bailable by a magistrate, or such offender shall not give bail for his appearance at the proper court, then the person apprehending such offender shall carry and convey him before one of the magistrates of the proper county

where such offense was committed, there to be dealt with according to law.

The lower court found that the above section permitted, but did not require, the officer to take the defendant to a magistrate in Philadelphia to enter bail, and that even if it did require him to do so the defendant could, and did, waive any rights he may have had.

Suggesting that it would have been better practice to have permitted the defendant, upon his request, to enter bail before a magistrate in Philadelphia for his appearance before the court of quarter sessions of Delaware County, but not deciding whether or not the act required the officer to permit him to do so, let us pass to the question of whether the defendant waived any rights he had. We agree with the trial court that he did.

"It is well settled that where, as in the present case, a defendant has had a preliminary hearing, has given bail for court, and has been regularly indicted by a grand jury upon examination of witnesses, it is then too late to question the sufficiency or regularity of proceedings prior to the indictment. In case defendant feels himself to be aggrieved in such circumstances, his proper remedy is by proceedings to be discharged from custody upon the ground of illegal commitment, and not by motion to quash the indictment . . ." *Com. v. Murawski*, 101 Pa. Superior Ct. 430, 431 (1931); *Com. v. Poley*, 173 Pa. Superior Ct. 331, 336, 98 A. 2d 766 (1953).

The appellant seeks to avoid the above "well settled" rule by arguing that the Delaware County Justice of the Peace had "no jurisdiction to entertain the litigation," and that lack of jurisdiction cannot be waived. But the Philadelphia magistrates had no jurisdiction to entertain the litigation. All they could do under the above act was to accept bail from the de-

fendant for court. The justice of peace in Delaware County alone had jurisdiction to hear the case.

By asking for a hearing and participating in it, and thereafter posting bond for court, the appellant waived any irregularities which might have existed in the arrest. *Com. v. Hill,* 166 Pa. Superior Ct. 388, 71 A. 2d 812 (1950).

The other questions raised by the appellant relate to the trial. They require a review of the facts developed by the testimony.

The defendant was charged with conspiring with Henry Hampton, Edward Hall, George Mayo and Claude Murray and "divers other evil disposed persons." He was likewise charged with setting up an illegal lottery, concerned in the management of an illegal lottery and selling lottery tickets.

Witness Henry Hampton testified that he entered into an agreement with defendant Caserta in October or November 1952 to sell lottery tickets and turn them in to Caserta's number bank. Hampton was to place his sales in a trellis in the rear of Hall's Tavern at 10th & Forrester Streets, Darby, Delaware County. Thereafter until May 27, 1952, Hampton, Mayo and Murray placed their lottery sales in the trellis. Mayo took the number slips from the trellis and delivered them to Hall who in turn delivered them to Caserta's bank.

Hampton was in contact with the defendant, Caserta, weekly discussing the numbers business and receiving payment for his services in connection with the lottery. On one occasion Caserta came to Hampton's home and there complained that Hampton was not turning in all the cash which should go to Caserta.

On May 27, 1952, Hall, Murray, Hampton and Mayo were arrested and subsequently tried and found guilty. After appeal to this court (*Com. v. Hall,* 173 Pa. Superior Ct. 285, 98 A. 2d 386 (1953), Hampton was im-

prisoned and a few days later made a statement implicating Caserta.

Upon Caserta's arrest Hampton accused him of being the head of the bank and Caserta made no denial. Caserta paid for the bail bond of the co-conspirators, paid part of their attorney's fee, and promised to pay for the appeals to this Court but "welshed" on this agreement.

Between the time that Hampton was committed to prison and the time Caserta was arrested Caserta called on Hampton's wife at her home on four successive days. He told her to go to the county jail and see that her husband did not "squeal". After learning that Hampton had implicated him, according to both Mrs. Hampton and her daughter he then said that "Henry could be killed for what he had done to him."

The defendant demurred to the evidence and offered no testimony on his behalf.

He now complains that the trial judge unduly restricted his cross examination of witness, Henry Hampton. Hampton's testimony was quite damaging to the defendant for, if believed, there was no doubt of Caserta's guilt. His cross examination was lengthy covering 64 pages of the printed record.

Counsel for defendant was permitted to bring out on cross examination that the witness had been arrested and convicted "for lottery" in 1941 and 1943. He was permitted to cross examine the witness at length concerning his occupation, what he earned during the war, in 1940, prior thereto, after he was discharged at the end of the war, how much cash he had in the house in 1941, whether he was a decent law abiding citizen. Then "to show the expenditure of large sums of money . . . to affect the credibility of this witness on the ground he was unemployed and had no assets" counsel, contending the witness had bought a

house for $2200 in 1944, asked the witness, "How much did you pay for your home in 1944?" The court stating "you cannot delve into his private affairs to that extent," sustained the objection of the district attorney and stopped further cross examination along that line.

Counsel having asked the witness whether he was a decent law-abiding citizen was then attempting to show that he spent more money than he earned, therefore he must have gotten the money unlawfully, therefore he was not decent, therefore he should not be believed. He was cross examining him on collateral issues for the admitted purpose of laying the ground to contradict him and thus affect his credibility. This he could not properly do. *Com. v. Scouton*, 20 Pa. Superior Ct. 503, 519 (1902); *Com. v. Petrillo*, 341 Pa. 209, 19 A. 2d 288 (1941).

Cross examination has a way of drifting into collateral issues and the proper time to stop it is a matter within the sound discretion of the court. In the absence of an abuse of discretion the trial court will not be reversed. *Com. v. Evancho*, 175 Pa. Superior Ct. 225, 103 A. 2d 289 (1954).

The appellant also complains concerning the admission of certain commonwealth exhibits.

When co-conspirator Hall was arrested he was driving a car up to co-conspirator, Mayo who had gotten the bag of number slips from the trellis. On previous occasions Mayo had given the bag which he took from the trellis to Hall when Hall drove up to him in an automobile. In the automobile Hall was driving this day were the 1951, 1952 and 1953 automobile registration cards and an insurance service card all containing the name of Angelo Caserta and an address of 2623 S. 71st St. Philadelphia. There was also testimony concerning the license number of the car. The

above cards were introduced into evidence, but apparently neither appellant or appellee considered them important enough to print in the 375 pages of printed record.

Whose automobile was being used in the furtherance of the conspiracy is relevant and the cards were evidence of this fact.

The indictment charges that Michael Caserta conspired with certain named persons and "divers other evil disposed persons." Any evidence tending to show that any person other than those named in this indictment was involved in the conspiracy was relevant.

But, even if this evidence was not relevant, its admission was harmless error. The testimony of Hampton, and other evidence, involving the defendant was direct and convincing. The evidence of the cards was not damaging to Michael. As a matter of fact evidence that the car being used by one of the co-conspirators to carry out the conspiracy belonged not to Michael Caserta but to some other Caserta, if it had any influence on the jurors, could have created some doubt in their minds as to whether the defendant was *the* Caserta engaged in the lottery business.

The appellant finally alleges that the trial judge's charge was prejudicially erroneous in that it failed to state accurately the weight to be accorded the testimony of an accomplice. Aside from what the trial judge said in his charge concerning the care to be taken in examining the testimony of accomplices he affirmed points 19 and 21 of the defendant which, with the Court's remarks on them, were as follows:

" '19. The testimony of an accomplice must be corroborated by some evidence independent of his testimony before you can convict the defendant.' Well, we do not go quite that far. You could convict on the uncorroborated testimony of an accomplice, but we say

to you that it would be rather dangerous and you should look at it with a great deal of care. However, we have already pointed out to you that if believed beyond a reasonable doubt there are other facts in the case separate and distinct from the testimony of the accomplice which would indicate, if believed, that Caserta, the defendant, was connected with these unlawful affairs. That is affirmed as read."

" '21. The testimony of an accomplice should be carefully scrutinized, not only because of any interest an accomplice might have in testifying falsely, but because his testimony is evidence from a corrupt source. Members of the jury should closely scrutinize such testimony and accept it only with caution.' That is affirmed as read."

The defendant had a fair trial in which his every right was protected by zealous counsel, and he was properly convicted.

Judgment of sentence affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called; and that he be by that court committed until he has complied with the sentence or any part thereof which had not been performed at the time this appeal was made a supersedeas.

GUNTHER, J. dissents.