380 A.2d 1258

**COMMONWEALTH of Pennsylvania**

v.

**Isadore H. BELLIS, Appellant.**

Superior Court of Pennsylvania.

Argued June 13, 1977.

Decided Dec. 2, 1977.

18

Raymond J. Bradley, Philadelphia, with him Alan J. Davis, Philadelphia, for appellant.

James A. Shellenberger, Assistant District Attorney, with him F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, CERCONE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This appeal arises from appellant's conviction on indictments charging him with violations of the Election Code, bribery, and malfeasance, misfeasance and nonfeasance in office. Several claims of error are presented in support of his allegations that he is entitled to arrest of judgment or a new trial. For the reasons that follow, we deem none of the alleged errors sufficiently meritorious to afford relief, and accordingly affirm the judgment of sentence entered below.

In June, 1972, the District Attorney of Philadelphia petitioned the Court of Common Pleas of Philadelphia County for a special grand jury investigation of alleged criminal conduct involving organized crime groups and public officials and employees. The Honorable Harry A. Takiff granted the petition, and charged the grand jury accordingly. On May 16, 1973, the grand jury filed its third presentment,

recommending that appellant be indicted on charges of bribery, malfeasance, misfeasance and nonfeasance in office, and violation of the Election Code.

Briefly, the investigating grand jury found that appellant violated the laws of the Commonwealth and his oath of office as a Philadelphia city councilman by improperly using his official position and influence in dealings with ARA Services, Inc., and the City of Philadelphia, as follows:

1) Negotiation of a five-year lease extension for certain concession privileges at Philadelphia International Airport on behalf of Aero Newsstands, Inc., a company owned by ARA, for which services Bellis demanded $50,000, and was subsequently paid $12,000;

2) Negotiation of a fifteen-year lease extension for the use of certain equipment at Philadelphia International Airport on behalf of Ground Services, Inc., for which services appellant received $30,000 cash, and $250,000 in ARA stock when ARA subsequently acquired Ground Services;

3) Negotiation of an agreement to provide Ground Services with certain counter space on the ground floor of Philadelphia International Airport, for which services appellant received a single cash payment of $10,000;

4) Negotiation of the sale of six acres of land near Philadelphia International Airport, owned by Philadelphia Industrial Development Corporation, to ARA for $60,-000, for which services appellant was to receive $50,-000, but received only $10,000, because ARA stopped payments to him on advice of counsel;

5) Negotiation of a fifteen-year restaurant contract for Philadelphia International Airport on behalf of ARA, for which services appellant received no payment on advice of ARA legal counsel;

6) Receipt of an illegal campaign contribution in the form of a $2500 check from William Fishman, President of ARA, to Harriet Lipman, secretary to appellant, which check was endorsed over to the Rizzo for Mayor Com-

mittee at the direction of appellant. Record at 89a-103a.

On June 28, 1973, following appellant's unsuccessful attempt to quash the grand jury presentment, the June, 1973 grand jury indicted appellant on thirteen counts of malfeasance, misfeasance and nonfeasance, eight counts of bribery, and one count of violation of the Election Code. Appellant then filed a petition for a writ of prohibition in the Supreme Court seeking a Municipal Court trial, which was granted in a per curiam order. The Honorable Harry M. Montgomery, specially assigned, presided over the Municipal Court trial, and found appellant guilty of eight counts of bribery, seven counts of malfeasance, misfeasance and nonfeasance and one Election Code violation. Six counts of malfeasance, misfeasance and nonfeasance were dismissed.

After this conviction was appealed to Common Pleas Court of Philadelphia, appellant was re-indicted by the August, 1974 grand jury, and the Honorable John A. Cherry was specially assigned to hear the case. On April 25, 1975, the jury returned guilty verdicts on all charges.

Appellant's post-trial motions were filed and argued before a three judge panel en banc, which denied the motions on August 18, 1976. Appellant was then sentenced to pay a $500 fine and $50 costs on each of the eleven indictments and placed on two years probation. This appeal followed.

Ten issues have been raised for our consideration: four in support of the contention that judgment should have been arrested, and six in support of a new trial. We will first necessarily consider the arrest of judgment issues.

I.

Appellant initially contends that judgment on the verdict should be arrested and the charges against him dismissed because as a councilman he is not an agent, employee or servant of another, and his conduct was unrelated to his official duties. He therefore argues that his bribery convictions under § 667 of the Penal Code cannot stand. Section 667 provides:

Whoever offers or gives to any agent, employe, or servant of another, or to a member of his family, or to anyone for his use or benefit, directly or indirectly, any commission, money, property, or other valuable thing, without the knowledge and consent of the principal, employer, or master, as an inducement, bribe or reward for doing or omitting to do any act, or for showing or forbearing to show any favor or disfavor, by such agent, employe, or servant, in relation to the affairs or business of his principal, employer or master, or whoever being an agent, employe, or servant, solicits, accepts, receives or takes, directly or indirectly, any commission, money, property, or other valuable thing as an inducement, bribe or reward for doing or omitting to do any act, or for showing any favor or disfavor in relation to the affairs or business of his principal, employer, or master, is guilty of a misdemeanor . . . . Act of June 24, 1939, P.L. 872, § 667 (1939) (current version at 18 Pa.C.S. § 4108 (1973)).

It is apparent from a reading of this section that the statute describes two crimes: one by the offeror of the bribe, and one by its taker. It is also apparent that appellant's conduct falls within the clear language proscribing the taking of bribes. We need not be detained by appellant's argument that he is not an agent, employee or servant within the meaning of the statute. If he is not an employee, which we do not decide, he is an agent of the city and a servant of the people. As such, he took payments in both money and stock for showing favors to ARA and companies it owned in direct relation to the business and affairs of the City of Philadelphia and its citizens. There is no question that this conduct violated the statute. *See Commonwealth v. Blatstein,* 231 Pa.Super. 306, 332 A.2d 510 (1974); *Commonwealth v. Francis,* 201 Pa.Super. 313, 191 A.2d 884 (1963).

Nonetheless, appellant contends that § 667 deals solely with commercial bribery, and therefore he cannot stand convicted under its terms because of the existence of specific statutes proscribing his conduct. Admittedly, other statutes

24

may describe appellant's actions with more particularity.[1] However, appellant has overlooked the principle that where one's acts violate both specific and general statutory provisions, prosecution is permissible under both, provided each prohibition requires proof of an element not required by the other. *See Commonwealth v. Buzak,* 197 Pa.Super. 514, 179 A.2d 248 (1962). We agree with the Commonwealth in this instance that the specific statutes cited by appellant contain a scope of authority limitation not found in § 667, and that § 667 requires proof of agency or employment, unlike 18 P.S. § 4303 and 53 P.S. § 553. Accordingly, prosecution was proper under the more general provisions of § 667.

■ Appellant next contends that his conviction of eight counts of malfeasance, misfeasance and nonfeasance cannot stand because malfeasance requires the breach of a positive statutory duty by a public officer. *Commonwealth v. Steinberg,* 240 Pa.Super. 139, 362 A.2d 379 (1976). He argues that because he did not violate Section 667, there is no basis for a finding of malfeasance. Our resolution of the applicability of § 667 to appellant's conduct, however, necessarily compels resolution of the malfeasance issue against him. Nevertheless, appellant alternatively argues that his conviction on charges of malfeasance cannot stand in any event because one cannot be prosecuted for a common law offense where his conduct also violates a specific provision of the Penal Code. 18 P.S. §§ 5101, 5104;[2] *Commonwealth v. Peoples,* 345 Pa. 576, 28 A.2d 792 (1942). Appellant has again missed the mark. The Commonwealth proved that appellant, a public official, violated § 667 in his capacity as a public official. Since these charges of malfeasance contained an additional element, *i. e.,* that appellant was a public official, they were by definition broader than the statutory offense, and therefore separately indictable and

1. Act of June 24, 1939, P.L. 872, § 303, *as amended,* 18 P.S. § 4303 (1939) (*current version at* 18 Pa.C.S. § 4701 (1973)); Act of May 23, 1874, P.L. 230, § 8, 53 P.S. § 553 (1974).

2. Act of June 24, 1939, P.L. 872, §§ 1101, 1104, 18 P.S. §§ 5101, 5104 (1939).

punishable. *See Commonwealth v. Ackerman,* 176 Pa.Super. 80, 106 A.2d 886 (1954).

█ Appellant's third argument in support of arrest of judgment alleges that his indictment for violation of the Election Code [3] is invalid because it involves a matter beyond the authority of the investigating grand jury. Our review of this issue is guided by *Commonwealth v. Soloff,* 175 Pa.Super. 423, 107 A.2d 179 (1954). In *Soloff,* a special grand jury was convened in Allegheny County upon petition by the district attorney, to investigate allegations of widespread conspiracies to defraud the City of Pittsburgh, and bribery of public officials and employees. The grand jury subsequently filed a presentment recommending indictment of the defendants, city police officers, for aggravated assault and battery in the arrest of a sex offender. After indictment and conviction on those charges, defendants appealed, urging discharge on the basis that the presentment exceeded the authority of the investigating grand jury. This Court discharged the defendants, holding that the crime for which they were convicted was not within the orbit of authority prescribed for the investigating grand jury.

The present case, on the other hand, presents a different situation. The petition of the District Attorney requesting a grand jury investigation alleged the existence of systematic corruption by certain Philadelphia public employees and officers, including bribery and malfeasance in office. Record at 6a; 28a-29a. The charge by Judge TAKIFF to the June, 1972 grand jury on this aspect of the investigation was as follows:

It is alleged that these varied acts of bribery and corruption to which I have made reference are a part of a system of similar or related crimes which have occurred within the County of Philadelphia within the past six years involving payment of money to obtain favorable official action or influence public officials in the perform-

3. Act of June 3, 1937, P.L. 1333, § 1604(a), *as amended,* 25 P.S. § 3224(a) (1963).

ance of their official duties, and I charge you to investigate these matters. Record at 80a.

We are persuaded that both the language of the petition and the charge apply to appellant's conduct in channeling an illegal campaign contribution from the president of ARA to the Rizzo for Mayor Committee. The language of our Supreme Court in *McNair's Petition*, 324 Pa. 48, 58, 187 A. 498, 503 (1936), refutes the contention that the disguised political campaign contribution was beyond the scope of the grand jury's authority:

> An investigation by a grand jury directed by the court, involves all the powers and incidents necessary to a complete inquiry into the subject matter in charge. . . .
>
> Its concern being of things rather than individuals, the scope of its investigation is very wide, including all the ramifications of the subject investigated and extending to all who may be brought within the field of culpability.

For these reasons, we hold that the grand jury's presentment recommending appellant's indictment for violation of the Election Code was within the scope of its investigation.

Appellant's final contention in support of arrest of judgment is that his prosecution for violation of the Election Code was barred by the statute of limitations. William S. Fishman, President of ARA, testified at trial that he wrote a check dated October 26, 1971, in the amount of $2500, to Harriet Lipman, Bellis' secretary. Campaign records indicate that the Rizzo for Mayor Committee received this check on October 29, 1971. The check was made payable to Lipman at appellant's suggestion, and was endorsed "Pay to the Order of Rizzo for Mayor Committee" above the signature "Harriet Lipman."

The indictment charging this violation was returned on August 6, 1974, well within the six-year statute of limitations contained in 19 P.S. § 211, which provides in part:

> All indictments which shall hereafter be brought or exhibited for any crime or misdemeanor, murder and voluntary manslaughter excepted, shall be brought or exhibited within the time and limitation hereafter ex-

pressed, and not after; . . . and all indictments and prosecutions for other felonies not named or excepted heretofore in this section, and for all misdemeanors, perjury excepted, shall be brought or exhibited within two years next after such felony or misdemeanor shall have been committed: . . . And provided also, That indictments for malfeasance, misfeasance, or nonfeasance in office, or for extortion or blackmail by color of office, or for embezzlement of public moneys or property or fraudulent conversion of public moneys or property, or for any misdemeanor in office, or for any conspiracy to commit any of said offenses heretofore or hereafter committed by any officer or employe of this Commonwealth or of any agency thereof, or of any city, county, borough, township, or school district or of any agency thereof, and their accomplices and confederates, may be brought or exhibited at any time within two years from the time when said public officer or said employe shall have ceased to occupy such office or such employment, but in no event more than six years from the commission of the offense. Act of March 31, 1860, P.L. 427, § 77, *as amended,* Act of April 6, 1939, P.L. 17, § 1, 19 P.S. § 211 (1964).

Appellant contends that the Election Code violation is covered by the general two-year limitation period, because it is not a "misdemeanor in office," to which the six-year limitation applies. He argues that "misdemeanor in office" means only "malfeasance, misfeasance and nonfeasance," and consequently does not include his violation of the Election Code. We conclude, however, that the legislature did not intend "misdemeanor in office" to have the same meaning as "malfeasance, misfeasance, and nonfeasance" when both are specifically mentioned in the statute, and hold that "misdemeanor in office" includes any criminal act committed by a public officer or employee during his tenure, and related to his official capacity. As a result, we conclude that the Election Code violation, which was unquestionably a part of appellant's improper dealings with ARA, came within the six-year limitation period applicable to misdemeanors in

office by public officials, and therefore hold that prosecution for that offense was timely.[4]

## II.

Appellant next raises several errors in support of his contention that he is entitled to a new trial. His first allegation in this regard is that the trial court's refusal to specifically instruct the jury that criminal intent is an essential element of the offenses was reversible error. After reading the court's charge to the jury, we cannot agree. In charging the jury on the violations of § 667, the trial judge read the statutory language three times. Additionally, he stated the elements of the bribery offense three times, including the fact that the money must be received, solicited or taken as an inducement or reward for doing or omitting to do an act or showing favor or disfavor in relation to the affairs of the principal, master or employer. This procedure was sufficient to place the issue of intent in the jury's hands. In *Commonwealth v. Francis,* 201 Pa.Super. 313, 323–24, 191 A.2d 884, 890 (1963), we said:

> Although there was some margin of dispute as to the criminal intent of appellant, an element of the case, the jury has resolved that issue against appellant. . . .
>
> Appellant was an agent and employee of the City of Philadelphia, he took the gifts aforementioned, he did favors . . . and he omitted doing acts required of him in the protection and furtherance of his employer's interests. It was for the jury to determine whether the favors shown and the acts omitted were induced by these gifts.

We similarly find that under proper instructions, the jury in this case resolved the question of intent or inducement against appellant on the bribery charges.

4. Our resolution of the applicability of the six-year limitation period to appellant's conduct makes it unnecessary to consider the contention that the initial indictment on June 28, 1973, did not toll the statute because it merely served as a complaint in Municipal Court.

■ Appellant also contends, however, that the court erred in its charge to the jury on malfeasance, particularly when it stated that no corrupt motive is required if the jury finds that defendant breached a positive statutory duty. This was not error. As appellant has so strenuously argued, he was not charged with malfeasance as the corrupt performance of a discretionary act, but as the breach of a positive statutory duty, namely, § 667. Therefore, once the jury found a violation of § 667, it properly convicted appellant of malfeasance by inferring criminal intent.

Criminal intent may be inferred by the jury from facts and circumstances which are of such a nature as to prove defendant's guilt beyond a reasonable doubt. *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820 [(1954)]; *Commonwealth v. Homeyer,* 373 Pa. 150, 94 A.2d 743 [(1953)]. *Commonwealth v. McSorley,* supra (189 Pa.Super. 223) at 229, 150 A.2d (570) at 573. *Commonwealth v. Steinberg,* 240 Pa.Super. 139, 152, 362 A.2d 379, 386 (1976).

■ Finally, the record reflects that the court below properly instructed the jury on the Election Code violation. The court stated the elements of the offense as a) making a contribution b) for primary or election expenses c) with funds given by another. The requisite intent was conveyed to the jury when the court said:

If you believe what Mrs. Lipman declared, that she did give instructions that that was from Mr. Fishman, and it was to be so noted, or if you infer from what she declared that those were the intentions, that was what she expected to be done, then you would not find the defendant guilty because there would be a revelation of who it was that gave the money. It was endorsed over by her to the Mayor's committee—the then candidate, now the Mayor with an idea that there would be a revelation of who actually gave it. . . . The Commonwealth's position is to the contrary that it was done with respect to the desire of Mr. Fishman that nobody know it; and if that be so, then if you determine that, you will have determined that with these elements guilt has been established, if you

decide that to have been done beyond a reasonable doubt. Record at 1545a-46a.

Contrary to appellant's contention, we find no imposition of a strict liability standard in violation of *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) or *Commonwealth v. Bready,* 220 Pa.Super. 157, 286 A.2d 654 (1971), and consequently hold that the trial court committed no error in instructing the jury on intent.

Appellant next contends that the trial judge committed reversible error when, in response to a question from the jury, he read § 20–602(1) of the Philadelphia Code of Ordinances.[5]  Appellant argues that this action was an impermissible re-introduction of § 20–602(1) into the case,[6] and that his conduct was not proscribed by the ordinance. We are not persuaded by appellant's non-applicability argument, for we deem his conduct to fall clearly within the terms of the ordinance.  Moreover, we are unconvinced by appellant's speculative assertion that he may have been convicted of malfeasance on the basis of § 20–602(1), particularly in light of the fact that the court below repeatedly cautioned the jury in the original charge that if they failed to find bribery, they could not find malfeasance.  Although appellant argues that further explanation should have been given with the supplemental charge, we note that the trial court is not obligated to give further instructions beyond those requested by the jury.  *Commonwealth v. Boone,* 467 Pa. 168, 181, 354 A.2d 898 (1976).

The third assignment of error in support of appellant's motion for a new trial concerns admission of the testimony of John R. Betts.  Over strenuous defense objec-

---

5. The Ordinance provides in part:
   No member of the Council nor other city officer or employee shall assist another person by representing him as his agent or attorney, whether or not for compensation, in any transaction involving the city.  .  .  .

6. At the trial of these charges in Municipal Court, Judge Montgomery found appellant not guilty of violations based on the ordinance, because the court did not consider him as representing outside interests as an agent or attorney.  Record at 203a.

tions, Betts testified that in 1971 and 1972 he gave appellant $9,000 in cash for favorable action on an architectural contract with the City of Philadelphia for construction of a terminal at Philadelphia International Airport. Appellant now contends that the Betts transaction was insufficiently similar to the transactions involved in the present case to admit the testimony under the exception of motive, common scheme, plan or design. *See, e. g., Commonwealth v. Smith,* 443 Pa. 151, 277 A.2d 807 (1971). Specifically, appellant alleges that because the fees paid in the Betts transaction were for the benefit of the Democratic Party rather than for himself, Betts' testimony should have been excluded. We cannot agree. In *Commonwealth v. Bruno,* 203 Pa.Super. 541, 201 A.2d 434 (1964), defendant, a borough councilman, was charged with extortion and misbehavior in office for threatening coal contractors with slow payments and penalties unless his kickback demands were complied with. We held in that case that the testimony of a coal broker as to prior similar transactions with the defendant was admissible to show a common purpose, design or scheme to secure money from contractors dealing with the Borough. *See also Commonwealth v. Dempsey,* 146 Pa.Super. 124, 22 A.2d 76 (1941). That is the common thread in the present case. Throughout the series of transactions testified to in the present case, appellant used his official position to improperly influence the awarding of contracts involving the City of Philadelphia. Whether the consideration for this misconduct flowed directly to appellant or through appellant to the Democratic Party, the transactions involved need not be identical to be admissible. We feel that they were sufficiently similar to show a common design or scheme. *Commonwealth v. Bruno,* 203 Pa.Super. 541, 554–55, 201 A.2d 434 (1964).

Furthermore, we agree with the Commonwealth that the evidence of prior similar transactions involving Betts was relevant in refuting appellant's repeated claim that he was acting in the capacity of an attorney. *See, e. g., United States v. Long,* 421 F.Supp. 1355 (W.D.Pa.1976). We there-

fore hold that the trial court did not abuse its discretion in admitting Betts' testimony.

Appellant next alleges that the trial judge erred in denying defense counsel access to interviews and statements made by Betts, after counsel requested the materials for cross-examination. It is fundamental that a witness's prior written statements should be made available upon request, to defense counsel. *Commonwealth v. Hamm,* 474 Pa. 487, 378 A.2d 1219 (1977); *Commonwealth v. Kontos,* 442 Pa. 343, 348, 276 A.2d 830 (1971); *Commonwealth v. Smith,* 417 Pa. 321, 208 A.2d 219 (1965). Nevertheless, we feel compelled to agree with the court below that the notes of discussions were not "statements" within the meaning of the rule, and therefore not available to defense counsel. Testimony before the lower court clearly indicated that notes taken from the questioning of Betts were not verbatim transcripts;[7] there was no stenographer present; and the interview was not taped or recorded by other means.[8] The interviewing officers testified that their notes were merely a synopsis of the discussions with appellant. Furthermore, the witness never saw or read the notes in question, or adopted them as his statement.[9] Under these circumstances we find no error in the trial court's refusal to direct that the notes be made available to appellant's counsel. *Cf. Commonwealth v. Collins,* 440 Pa. 368, 373, 269 A.2d 882 (1970).

Moreover, even if there was error in the court's refusal to order production of the notes, we are persuaded that the error was harmless beyond a reasonable doubt. The notes indicate that when Betts was questioned by police

7. See *Commonwealth v. Morris,* 444 Pa. 364, 281 A.2d 851 (1971). *Commonwealth v. Spann,* 235 Pa.Super. 321, 340 A.2d 862 (1975), which interpreted *Morris* as requiring disclosure of notes of interviews is not to the contrary, because *Morris* involved a verbatim transcript.

8. See *Commonwealth v. Kubacki,* 208 Pa.Super. 523, 224 A.2d 80 (1966).

9. See *Goldberg v. United States,* 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976).

officers concerning architectural work at Philadelphia International Airport, he denied being solicited for payoffs or making payoffs to anyone for favorable action on City contracts. These facts were disclosed during questioning of Betts at appellant's trial. On direct examination, Betts testified that he did not initially admit making cash payments to Bellis.[10] Further inquiry was objected to by defense counsel, and sustained by the court below, but reopened on cross examination by appellant's counsel. Repeated questioning by defense counsel clearly demonstrated to the jury that appellant, when previously questioned by police authorities, denied making payments to Bellis for city contracts.[11] Under these circumstances, if there was error it was harmless beyond a reasonable doubt. *Cf. Commonwealth v. Bennett,* 471 Pa. 419, 370 A.2d 373 (1977).

Appellant also contends that he is entitled to a new trial because the Commonwealth suppressed exculpatory evidence in its possession. This allegation of error was not raised in appellant's original post-trial motions, nor was the right to file supplemental motions reserved. We therefore deem this issue waived. *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975).

The final alleged basis for a new trial concerns the lower court's refusal to permit certain cross-examination of Malcolm Robertson, President of GSI, who testified on direct examination that he made cash payments to appellant for services as GSI's attorney in negotiating city contracts. Appellant denied asking for or receiving any payments from Robertson, and offered to show that Robertson was an inveterate gambler in great need of cash, and that Robertson regularly falsified GSI records to conceal the nature of several cash payments made by the corporation. We find no abuse of discretion. The scope of cross-examination is, of course, a matter within the sound discretion of the trial

10. Record at 1155a-56a.

11. Record at 1187a-88a; 1197a-98a; 1212a; 1215a; 1231a; 1236a. Appellant's counsel also argued this inconsistently to the jury in closing. *Id.* at 1428a-29a.

court. *Commonwealth v. Scott*, 469 Pa. 258, 270, 365 A.2d 140 (1976). We are satisfied first that the trial judge permitted appellant wide latitude in cross-examining Robertson to show inconsistencies in his testimony and irregular and questionable cash transactions involving GSI. Nonetheless, we agree with the court below that beyond this point, appellant's offer to prove the witness's gambling habits were irrelevant to the determination of appellant's guilt or innocence, and merely a thinly-veiled effort to blacken the witness's reputation. Consequently, we hold that the trial court did not abuse its discretion in restricting cross-examination as it did. *Cf. Commonwealth v. Caserta*, 177 Pa.Super. 461, 110 A.2d 808 (1955).

Accordingly, the judgment of sentence is affirmed.

SPAETH, J., concurred in the result.

HOFFMAN and PRICE, JJ., did not participate in the consideration or decision of this case.