## Osser v. City of Philadelphia

*Neil Jokelson*, for plaintiff.
*John M. McNally*, for defendant.

MARUTANI, *J.*, March 28, 1979—Plaintiff, Maurice Osser (Osser), has filed a motion for judgment on the pleadings against defendant, City of Philadelphia (City).

## BACKGROUND SUMMARY

From January 7, 1952, to December 20, 1972, a period of over 20 years, Osser was employed by the City of Philadelphia. On December 21, 1972, Osser resigned from his then current position, the elected office of County Commissioner.[1] This resignation followed Osser's conviction in the Federal court for "mail fraud, conspiracy and endeavoring to obstruct criminal investigation[;] in violation of 18 U.S.C. Sections 1341, 1342, 371 and 1510."[2] On

---

1. Stipulation of counsel (hereafter stipulation) dated September 25, 1978, par. 1(a)(ii), (1)(b)(i) and (ii). The office became known as City Commissioner of the City of Philadelphia.

2. Judgment and commitment dated December 20, 1972, in the matter of United States of America v. Maurice S. Osser, Criminal Docket 72-384, U.S. District Court for the Eastern District of Pennsylvania. See United States v. Osser, 483 F. 2d 727 (Cir. 3, 1973), cert. den. 414 U.S. 1028, 94 S.Ct. 457, 38 L. Ed. 2d 321 (1972).

March 12, 1976, almost 39 months after he had resigned, Osser filed a pension claim with the Board of Pensions and Retirement of Philadelphia (Board), seeking monthly pension benefits of $942.90 effective as of the date of his resignation.[3] The claim was denied by the board on May 24, 1976.[4]

On August 17, 1976, Osser filed a complaint in assumpsit against City, seeking payment of "pension and retirement benefits."[5] City defends against such claim by responding that "[p]laintiff has forfeited his right to any pension or retirement benefits by his conviction in the Federal Court for violation of Title 18, §1341 of the United States Code entitled 'Mail Fraud.'"[6] Osser then filed his motion for judgment on the pleadings which is presently before us for disposition.

---

3. Stipulation, par. 1(c).

4. Ibid.

5. Plaintiff's complaint in assumpsit, par. 4. Osser had also asserted a claim for salary. However, such wage claim is not being pressed by Osser: stipulation, par. 1(a)(iv).

6. Defendant's answer to complaint in assumpsit, par. 4. Further under new matter, defendant City avers that:

"8. The Plaintiff has failed to exhaust his administrative remedy which is an appeal from the refusal of the Board of Pensions and Retirement to grant him pension benefits.

"9. Section 217 of the Pension Ordinance provides that no employee shall be entitled to retirement benefits who has been found guilty of accepting a bribe for the performance of his duties, engaging in graft or corruption, commission of theft or embezzlement, or malfeasance in office.

"10. The conviction of the Plaintiff in the U.S. District Court for the Eastern District of Pennsylvania for violation of Title 18 §1341 of the U.S. Code disqualifies him, in accordance with Section 217 of the Pension Ordinance for pension or retirement benefits."

In support of his claim for relief, Osser propounds several contentions: (a) that he was not convicted of any of the offenses enumerated under section 217.1 of the Pension Ordinance; (b) that disbursement of his pension claim is "mandatory;" (c) that his pension claim is "vested;" (d) that payment of pension benefits to former City Councilman Isadore H. Bellis, who also had been convicted while in office,[7] while denying pension benefits to Osser, constituted denial of equal protection as well as due process.

We shall address these various contentions separately.

## DISCUSSION

The disqualification provision in question, section 217.1 of the Pension Ordinance, reads in pertinent parts, as follows:

"Notwithstanding any other provision of this article, no employee[8] nor any beneficiary designated by or for any employee shall be entitled to receive any retirement or other benefit or payment of any kind except a return of contribution paid into the Retirement System, without interest, if such employee

"(a) pleads or is finally found guilty, or pleads no defense, in any court, to any of the following:

---

7. Mr. Bellis was convicted for violations of the Election Code, bribery, and malfeasance, misfeasance and nonfeasance in office. See Commonwealth v. Bellis, 252 Pa. Superior Ct. 15, 380 A. 2d 1258 (1977); see footnote 30, infra.

8. Section 201(a) of the Pension Ordinance defines "employee" as: "Any *elected* or appointed officer or employee who is paid out of the Treasury of the City; . . ." (Emphasis supplied.)

"(1) Perjury committed in connection with his official duties or in any affidavit or proceeding concerning his official duties or conduct;

"(2) Acceptance of a bribe for the performance, or affecting the performance or for the nonperformance of his official duties, . . . ;

"(3) Engaging in graft or corruption incident to or in connection with his office or employment constituting a violation of the laws of the Commonwealth of Pennsylvania or the United States;

"(4) Theft, embezzlement, wilful misapplication, or other illegal taking of funds or property of the City, . . . ;

"(5) Malfeasance in his office or employment;

"(6) Engaging in a conspiracy to commit any of the foregoing;[9]

### 1. Was Osser convicted in Federal court of an offense within the meaning of section 217.1 of the Pension Ordinance?

Osser contends that the "mail fraud" statute, Act of June 25, 1948, 62 Stat. 763, as amended, 18 U.S.C.A. §1341, under which he was convicted, is a statute "general in application, not reserved for public employees" and thus "a conviction for same does not constitute a conviction for any of the enumerated offenses described under 217.1(a)."[10]

9. Prior to the amendment of April 27, 1967, subparagraph (6) read as follows: "(6) Commission of a felony or crime of violence under the laws of the Commonwealth of Pennsylvania or of the United States; . . ." This paragraph was eliminated, and replaced by the previous subparagraph (7).

10. Osser's memorandum of law in support of motion for judgment on the pleadings, pp. 3-4.

18 U.S.C.A. §1341, provides as follows: "Whoever, having devised or intending to devise any scheme or artifice to de-

The record in the proceedings of United States of America v. Maurice S. Osser, Criminal no. 72-384, U.S. District Court for the Eastern District of Pennsylvania, reflects the bases for Osser's conviction. The bill of indictment under which Osser was charged and ultimately found guilty on nine counts[11] points to some of the bases: that Osser was "a duly elected City Commissioner of Philadelphia, whose salary was paid out of the City Treasury;"[12] that the City Commissioners were empowered under the Act of June 3, 1937, P.L. 1333, as amended, 25 P.S. §2642, to purchase election equipment;[13] that competitive bids are required under article VIII, section 8.8-200, of the Philadelphia Home Rule Charter, 351 Pa. Code;[14] that under article X, section 10.10-102, of the said charter, no governmental officer whose salary is paid

fraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, place in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

11. There were a total of eleven counts in the bill of indictment.

12. Par. 1, indictment filed June 28, 1972.

13. Ibid., par. 2.

14. Ibid., par. 6.

out of the City treasury may benefit from or have an interest in any city purchase contract;[15] that Osser conspired with officials of a printing firm to defraud the City of Philadelphia whereby pre-programmed bids were received and Osser received "secret monies . . . in the performance of his official duties as City Commissioner of the City of Philadelphia."[16] Osser was found guilty of having posted in the mails seven checks totalling $175,786.35 to Weiss Printing House in conjunction with the scheme to defraud the City of Philadelphia.[17] Accordingly, on December 20, 1972, Osser was found convicted of "the offense of mail fraud, conspiracy, endeavoring to obstruct criminal investigation by misrepresentation."[18]

Osser was not convicted for use of the mails, an act which in itself is totally innocent and one properly engaged in daily by millions of our citizenry. What he was convicted of were *illegal acts underlying* his use of the mails. "Federal mail fraud requires proof of a scheme to defraud and the use of the mails for purpose of executing the scheme. . . .

---

15. Ibid., par. 7.

16. Ibid., par. 8-c.

17. Osser was also charged with, and found guilty of, conspiring with two officials of the printing firm, as well as seeking "to obstruct, delay and prevent Leon Freedman [one of the officials of the printing firm] from communicating information . . . to Special Attorneys of the United States Department of Justice, . . . in violation of Title 18, United States Code, Section 1510." See bill of indictment, Counts X and XI; also Judgment and Commitment dated December 20, 1972.

18. Judgment and Commitment, United States of America v. Maurice S. Osser, Criminal no. 72-384, U.S. District Court for the Eastern District of Pennsylvania.

[Case cited.]" Com. v. Grazier, 481 Pa. 622, 625, 393 A. 2d 335, 340 (1978).

That Osser was convicted of the underlying acts and not simply of an offense labelled "mail fraud," may be tested by the litmus paper of double jeopardy. If it be true that Osser was convicted only of mail fraud, and hence the Commonwealth were to seek prosecution of him for the underlying acts, there is little doubt that any such prosecution would be subject to the bar of double jeopardy: Com. v. Grazier, supra.[19]

Without such illegal underlying acts, there could not have been a "mail fraud" conviction. Furthermore, such underlying acts were directly related to and involved Osser's office, employment and duties. Osser's transgressions were not ones dehors his office; they were inextricably intertwined with, and involved the direct exploitation of, the power of his elected office for his own personal gain.[20]

It is true, as Osser contends, that section 217.1(a) of the Pension Ordinance does not specifically enumerate "mail fraud" as one of the bases for disqualification; however, that the legislative concern was focused upon infidelity in a position of official trust is unmistakably etched into each of the six numbered subsections of the disqualification section. That Osser's conviction rests upon

19. In Grazier the Supreme Court rejected the contention that mail fraud and the underlying offense (arson) were "different offenses." 481 Pa. at 631, 393 A. 2d at 339.

20. As noted in footnote 9, supra, a transgression which may not necessarily involve one's office or employment was amended out of the Pension Ordinance. Thus the concern of the legislative body may well be deemed to have focused upon transgressions in one's official duties.

acts which give rise to disqualification, particularly under section 217.1(a), subsections (2), (3) and (5), is beyond cavil.

### 2. Is payment of pension benefits "mandatory?" Was Osser's claim to a pension "vested," thereby entitling him to payment of pension benefits notwithstanding his criminal conviction?

Osser refers to the provisions of the Act of May 20, 1915, P.L. 566, §§1, 3, 53 P.S. §§13431, 13433, in support of his contention that payment of pension benefits is mandatory.[21] In particular, Osser points to section 3 of the Act of 1915, as amended, reading in pertinent part as follows: "Every person . . . employed by the said cities, . . . of the age of sixty years and upwards, who shall have been so employed for a period of twenty years or more, *shall*, upon application . . . be retired . . . and *shall* . . . receive a pension . . . fixed by this act. . . ." (Emphasis supplied.)

Pointing to the verb "shall," Osser contends that payment is mandatory and that "the legislature has indeed created a vested right in the employe of the city of the first class which cannot be breached or otherwise altered by a city ordinance.[22]

"Except when relating to the *time* of doing something, statutory provisions containing the word 'shall' are usually considered to be mandatory, but it is the intention of the legislature which governs, and this intent is to be ascertained from a consideration of the entire act, its nature, its object and

---

21. Osser's memorandum of law in support of motion for judgment on the pleadings, pp. 4-6.

22. Ibid. at p. 6.

the consequences that would result from construing it one way or the other." Pleasant Hills Borough v. Carroll, 182 Pa. Superior Ct. 102, 106, 125 A. 2d 466, 468 (1956), allocatur denied, 182 Pa. Superior Ct. xxiv. (1956). Also see: Francis v. Corleto, 418 Pa. 417, 211 A. 2d 503 (1965); In re DuPont Borough Wards, 36 Pa. Commonwealth Ct. 504, 387 A. 2d 1367 (1978).

The legislative enactment is not limited to section 3. Section 2 provides for establishment of a Pension Board empowered to "make such reasonable rules . . . as such board may deem necessary to effectually carry into effect the provisions of this act."[23] In addition, section 7 contains the saving clause reading: "Nothing contained in this act shall be construed to affect the power of a city of the first class or the powers or duties of any board, department or the council thereof to provide and administer pension and retirement systems covering officers and employes of the city, as provided by and authorized and directed under the Home Rule Charter of such city.[24] Philadelphia's Home Rule Charter[25] contains several provisions relating to establishment and operation of a pension board.[26] Pursuant thereto, a comprehensive pension and re-

23. Act of May 20, 1915, P.L. 566, §2, 53 P.S. §13432.

24. Act of January 18, 1951, P.L. 2184, §5, 53 P.S. §13447.

25. Adopted by the electorate on April 17, 1951, under authorization of the First Class City Home Rule Act of April 21, 1949, P.L. 665, 53 P.S. §13101 et seq. The Charter has "the force and status of a legislative enactment:" Addison Case, 385 Pa. 48, 57, 122 A. 2d 272, 276 (1956).

26. Philadelphia Home Rule Charter §3.3-100(3), §2.2-308, §3.3-803, §6.6-600 and 601.

tirement system was established,[27] including an explicit provision for disqualification for benefits for criminal conduct in one's official duties.

By enactment of section 217.1 to the Pension Ordinance, the legislative intent was made clear that an employe found guilty of criminal acts related to his official duties was not to be rewarded with largesse from the very source he had violated and that payment of a pension claim in such a situation was neither a vested right nor mandatory. A contrary interpretation may well permit an employe to engage in thievery against his employer—theoretically for the entire period of employment—and then upon the expiration of the necessary time period, demand and receive "vested" (or mandatory) pension benefits, even as such ex-employe may openly flaunt, with impunity, the victimization of his intended benefactor-for-life.

Furthermore, at the time section 217.1 was incorporated into the Pension Ordinance, Osser had been in the City's employ less than five years;[28] thus as of the effective date of the Pension Ordinance, with its disqualification provision against criminal conduct in office, Osser could not have had vested rights, even under Osser's broad interpretation.[29]

---

27. Philadelphia Retirement System Ordinance, December 3, 1956, amended April 6, 1959; April 4, 1961; April 27, 1967; August 14, 1968.

28. Osser became a City employe on January 7, 1952; the Pension Ordinance was enacted on December 3, 1956.

29. Distinguish Kane v. Policemen's Fund of Pittsburgh, 336 Pa. 540, 9 A. 2d 739 (1939), wherein establishment of new fund and change occurred eight years after plaintiff-claimant had become eligible for and had been receiving benefits from the old fund.

3. Inasmuch as former City Councilman Isadore H. Bellis, who also had been convicted while in office, has been awarded a pension from the City, does denial of pension benefits to Osser constitute unequal protection of the laws or denial of due process?

Former City Council member, Isadore H. Bellis (Bellis), was convicted on April 25, 1975, of violations of the Election Code, bribery, and malfeasance, misfeasance and nonfeasance in office.[30] Prior to the adjudication of his appeal, Bellis had applied for and had been granted a pension.

Osser contends that Bellis had been awarded pension benefits "pursuant to the written advice of the City Solicitor's office which found that the key determinant was that Bellis was not 'finally found guilty' because of his extant appeal right and accordingly he could not then or ever after be deprived of his City pension."[31]

---

30. Bellis' convictions were affirmed by the Superior Court: Commonwealth v. Bellis, 252 Pa. Superior Ct. 15, 380 A. 2d 1258 (1977); thereafter, on further appeal to the Pennsylvania Supreme Court, the judgments of sentence as to bribery and violation of the Election Code were affirmed, and those as to malfeasance, misfeasance and nonfeasance were reversed: Commonwealth v. Bellis, _____ Pa. _____, _____ A. 2d _____ (1979).

31. Osser's memorandum of law in support of motion for judgment on the pleadings, p. 16. Indeed, there does appear a memorandum dated January 19, 1976, presumably from the City Solicitor's Office directed to Abraham Pilzer, Executive Director, Board of Pensions & Retirement, in which the following appears: "In this particular case, Bellis has been found guilty by the lower Court, and the matter is now on appeal. It is clear that at this point, he has not been 'finally found guilty' of any offense which prohibits the payment of the pension bene-

However, the conclusion reached by the Office of the City Solicitor, that Bellis was entitled to pension benefits, has not been subjected to judicial review. For example, would it have been proper for the Pension Board to have suspended payment to Bellis by invoking the provisions of section 217.2 pending final determination of Bellis' appeals? And if following such appeals, Bellis were "finally found guilty," would the provisions of section 217.1(a) have prevented him from receiving "any retirement or other benefit or payment of any kind except a return of contribution paid into the Retirement System. . . . ?"[32]

Beyond this, mere selective enforcement may not be violative of the right to equal protection. To support his claim of such violation, Osser would have to demonstrate not only that Bellis received pension benefits and that Osser was denied such benefits, but also that such selectivity, if such be the case, was deliberately based upon race, religion or some other arbitrary classification: Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L. Ed. 2d 446 (1962); United States v. Berrigan, 482 F. 2d 171 (3d Cir. 1973). Here there is no suggestion of any such criteria.

---

fits. In answer to your question, Bellis has not been disqualified under Section 217 of the Retirement System Ordinance, from receiving pension benefits."

32. Pension Ordinance section 217.1(a). There are other questions to be considered and resolved. What is the impact of section 217.1(c) of the Pension Ordinance? Is the phrase "finally found guilty" to be measured as of the *time* an application is made for benefits even though criminal proceedings are pending, or does it refer to ultimate *entitlement*? If not ultimate entitlement, then what was the purpose of the word "finally?"

Wherefore, there is entered the following

## ORDER

And now, March 28, 1979, upon consideration of the motion for judgment on the pleadings filed by plaintiff, Maurice Osser, as well as the response thereto filed by defendant, City of Philadelphia, it is hereby adjudged, ordered and decreed that plaintiff's said motion is denied and dismissed, excepting however plaintiff's right to return of his contribution paid into the Retirement System.

